Robb
v.
Potts.

## Molinari et al. *v.* Fernandez, Tutrix.

Art. 368 of the Civil Code, which authorises a husband, though a minor, to appear in court in all cases, is an innovation on the former laws on the subject, and forms an exception to the dispositions of arts. 376, 377, 1235, and 1236 of that Code; and these articles now apply only to cases of ordinary emancipation. A similar power is conferred upon the wife who is under age, provided she be authorised by her husband, by sec. 12 of the stat. of 25 March, 1828, amending art. 999 of the Code of Practice.

Where a mother, who had forfeited the natural tutorship of her children by marrying a second time without having been legally authorised to retain it, after the death of a tutor appointed in her place and of her second husband, is re-appointed tutrix by the advice of the family meeting, she will not be bound to give bond. The rule exempting the father or mother from giving security before acting as tutor or tutrix, is a general one, to which an appointment under such circumstances forms no exception. *Per Curiam:* Under art. 950 of the Code of Practice, the judge might have appointed her tutrix without the advice of a family meeting; the submission of her application to such a meeting, and its decree declaring her worthy of the trust, can impose no additional burthens on her.

The designation of a notary before whom the inventory and appraisement are to be made, is only necessary where a partition is to be made in kind. In cases of licitation it is unnecessary; in such cases an appraisement made before the sale, in the mode usual in seizures under execution, is sufficient.

APPEAL from the First District Court of New Orleans, *McHenry*, J. Antoine Molinari died in 1833, leaving three minor children: *Antoine, Theresa,* and *Paul.* His widow was confirmed as the natural tutrix of these minors. She proceeded to settle the estate, and on its final liquidation the only property left for the children was a house in Hospital street, in this city. The widow afterwards contracted a second marriage with *Rufino Fernandez,* and afterwards surrendered her tutorship, and caused a dative tutor to be appointed, agreeably to the forms required by law in such cases. Her second husband, *Fernandez,* died in September, 1843; and shortly after, the tutorship having become vacant, *Mrs. Fernandez* was appointed, on the recommendation of a family meeting, and confirmed as natural tutrix of said minors *Molinari.* She took the oath required by law, but gave no bond, and has since acted as the legal representative of said minors, in all matters appertaining to the administration of their estate. The two eldest children, *Antoine* and *Theresa,* having been emancipated by marriage, instituted suit against *Mrs. Fernandez,* as tutrix, of their brother *Paul J. Molinari,* for a partition. She answered in her capacity of tutrix, but made no defence; she admitted the plaintiffs' right to obtain the partition by licitation, as prayed for, and submitted the case to the judge, who gave judgment accordingly. The property was advertised, appraised, and, at the sale, adjudicated to *Omer Gaillard,* for a sum considerably exceeding the appraisement; but this purchaser now refuses to comply with the terms of sale. A rule was taken against him, which was made absolute, and he has appealed.

| 2 | 553 |
| 115 | 370 |

| 2 | 553 |
| 118 | 752 |

| 2 | 553 |
| 123 | 158 |
| 125 | 508 |

*S. L. Johnson,* for the appellant. I. *Mrs. Fernandez* was not duly qualified to represent, as tutrix, the minor *Paul J. Molinari.* The children of the first marriage would have had a prior légal mortgage on the property of their mother, if she had·not forfeited the tutorship ; by her fault their mortgage is now inferior to that of the children of the second marriage. Under these circumstances, it·is contended that she is not duly qualified·as tutrix of the minor, *Paul J. Molinari ;* that she must give security like any other dative tutor, in order to be qualified ; and that the exemption, in article 330, of the father and mother from giving security, avails them only when they hold the tutorship by right, the only species of tutorship which the Code supposes the father and mother to hold. C. C. 272, 288, 330: *Tutorship of Mossy,* 3 Rob. 390: Article 951 of the Code of Practice, would seem to favor the idea that she might have claimed the tutorship by right; but it would not authorise her to claim the appointment in a case like the present, where, by her neglect, she has incurred the penalty of art. 272 of the Civil Code, and has given the children of the second husband, a prior mortgage on all her property, even that which she may have derived from the first community.

Moreover, she did·not claim the tutorship of right, but accepted the dative tutorship as it was conferred upon·her. The question is, whether the exemption in art. 330 of the father and mother from giving security, can avail the mother, when dative tutrix. Upon this point, there appears to be no authority. It was not raised in the case of the *Tutorship of Mossy,* because,·as we are informed, the maternal grand-father of those minors, offered to be security for his daughter, as their tutrix. In the French Code, security is not required from tutors of any kind. Art. 288 clearly shows that the framers of our Civil Code did not contemplate the father or the morther's becoming a dative tutor. The facts of this case show that there might be serious prejudice to the issue of the first marriage, by the doctrine contended for by our opponents. The minor, *Paul,* is not represented in the rule, and was not a party to the. original suit; there was, therefore, no defendant, and no *contestatio litis ;* the judgment was consequently null, and could not authorise the sale of the property.

II. The plaintiffs also were minors, emancipated by marriage, and were not specially. authorised by the judge, on the advice of a family meeting, to sue for the partition of their property, as required by law in·such cases. C. C. 1236, 1235, 376, 377. *Breaux* v. *Carmouche,* 9 Rob. 36.

III. No public inventory of the property to be divided, such as is required for the basis of a judicial·partition, was made during the pendency of the suit, nor within one year preceding it. C. C. 1246-9. This inventory might have been made after the decree of partition, and at any time before the sale. *Millaudon* v. *Percy,* 5 Mart. N. S. 554. *Lalanne's Heirs* v. *Moreau,* 13 La. 433. This was not one of those errors of proceeding, which are covered by the judgment of the court. 13 La. 433. But we are told that the appraisement which was made, was a substantial compliance with the law ; and that art. 1247 is applicable only to partitions in kind, and not to those to be effected by a sale. An appraisement made without the presence of the parties interested, or that of a notary or witness, evidenced by no public act—by nothing but a slip,of paper filed in court, containing a *procès-verbal* under private signature, purporting to be signed by the appraisers alone, is far from being a substantial compliance with the law prescribing the form of public inventories. Arts. 1247, 1093-9, 1101-3. Art. 1247 makes no distinction·between partitions in kind, and those which are made by a sale of the property.

IV. It is urged by the plaintiffs in the rule, that the purchaser cannot refuse to take the property and pay the price, unless he be disturbed in his possession. In support of which position, they cite the following authorities : Arts. 710, 711, C. P., and the cases of *Collins* v. *Daly,* 4 Rob. 113. *Abat* v. *Vallet,* 3 Mart. N. S. 220. *Foster* v. *Murphy,* 5 Ib. N. S. 82. *Freret* v. *Meux,* 9 Rob. 416. *Stille* v. *Bronson,* 5 Mart. N. S. 47.

All·of·these authorities except *Freret* v. *Meux,* are inapplicable to the present case. Arts.·710, 711, C. P. apply to·sheriffs' sales·made under writs of *fi. fa.,* in cases where the property is subject to legal or judicial mortgages. These mortgages do·not prevent the sale under a *fi. fa.,* nor excuse the purchaser for not complying with the conditions of the sale, saving the cases excepted in art. 710. All of the cases above cited, except that of *Freret* v. *Meux,* relate to sheriffs' sales made·under writs of *fi. fa.* The general expression of judicial

sales, which is applied as well to sales in execution of writs of *fi. fa.*, as to those ordered by a court in matters of succession or partition, could alone give rise to the error of confounding this case with those above cited. Our Code, art. 2594, says that: " Sales which are made by authority of law, are of two kinds: 1st. Those which take place when the property of a debtor has been seized by order of a court, to be sold for the purpose of paying the creditors. 2d. Those which are ordered in matters of succession or partition."

MOLINARI *v.* FERNANDEZ.

Sales under execution do not give rise to the redhibitory action, but may be set aside, in cases of fraud, and declared null in cases of nullity. C. C. 2597, 2515. They transfer only the rights of the debtor, such as they are. C. C. 2598. On the contrary, " all the warranties to which private sales are subject, exist against the heir in judicial sales of the property of successions. Art. 2602. When the court, in *Freret* v. *Meux*, say that the vendee, " may refuse to pass the sale until a good title is tendered to him, and must be relieved if his vendor is unable to give one; it is otherwise with regard to judicial sales," citing Code of Practice, art. 710, 3 Martin N. S. 221, it is evident from the authorities cited by the court, that the first class of judicial sales specified under art. 2594, was alone intended.

The heirs of *Molinari* wish to sell their property to effect a partition. If of age, they might agree to sell it by an auctioneer, or an attorney in fact. We might in that case, refuse to accept a sale of real estate, until the auctioneer or attorney in fact was shown to be authorised in writing, by all the parties in interest to sell; until a good title be made out to us; until, in fine, such title be tendered to us in writing. C. C. 2584, 2255, *Freret* v. *Meux*, above cited. Not being of age, they can sell only through legal representatives and with legal formalities. What should forbid us in this case, to examine the qualifications of those *soi-disant* legal representatives, and the reality of the alleged authorisation? Ours is not the case of a purchaser who has accepted a deed and taken possession of the property, and is trying to see how long he can enjoy it without paying the price; so that art. 2535 does not apply to us. *Pontchartrain R. R. Company* v. *Durell*, 6 La. 485. *Freret* v. *Meux*, above cited. We have not taken possession of the property, because we believed that the judgment and sale conveyed to us no title. The tender of title in the rule, by the minor plaintiffs in the rule, can add nothing to the previous formalities. If the judgment and public sale have divested the minors *Molinari* of their rights, and transferred them to us, we are willing and ready to pay the price.

*Collens*, for the plaintiffs, and *Pecquet*, for the tutrix, in reply. *Mrs. Fernandez* never claimed the dative tutorship provided for by art. 272. She preferred to surrender the tutorship; and, at her own request, a dative tutor was appointed in her place; but after the death of her second husband, her incapacity to hold the tutorship, by natural right, having ceased, she prayed for and obtained the natural tutorship provided for by art. 268. Art 272 is intended as a protection against the second husband. The mother cannot be suspected of any such bias, all the children are her's, and she must feel for them equal solicitude. During the second marriage, she might yield a great deal to the influence of her husband; but after his death she occupies in the eye of the law the same position with regard to all her children. There being, after the death of the second husband, no existing legal cause of exclusion, article 288 could no longer apply. If, after the death of the second husband, *Mrs. Fernandez* had a right to the natural tutorship, no family meeting was necessary, though indeed one was held, and it advised her appointment. She was "of right" entitled to the tutorship, it being then, vacant. C. C. 265, 268. No cause of exclusion could be urged against her; no other person could claim a preference. The circumstance requiring the call for a family meeting, provided for by arts. 272 of the C. C., and C. P. 951, could not apply to the widow; for, at the time, there was no marriage existing or intended. She was not therefore required to give security. C. C. 269, 330.

The cases of *Mossy*, 3 Rob. 390, and *Robinson* v. *Weeks*, 5 Mart. N. S. 379, do not apply. In those cases, the second husband was living.

Boileux, in his " Commentaire sur le Code Civil," under art. 395, C. N., says: " A la mort du deuxième mari, la mère qui n'a pas été maintenu, recouvre-t-elle la tutelle? Nous le pensons : *cessante causâ, cessat effectus.*"

Letters of tutorship are mere certificates of the fact of appointment or confirmation; and their existence or non-existence cannot disturb the legal character and validity of the appointment by the judge. It is the confirmation duly

Molinari    made, followed by the oath required by law, which invests the natural tutor or
v.    tutrix with his or her official charge and responsibility. The assumption that,
Fernandez.  if *Mrs. Fernandez* gives no other security than the tacit mortgage, *Paul Moli-
nari's* mortgage must be necessarily inferior to that of the minors *Fernandez*,
as being of subsequent date, is an error, for the "confirmation" as natural tutrix
must date, in relation to the children of both marriages, back to the time when
the tutorship was actually assumed, or was vested by law, to wit, to the date of
the death of the second husband. C. C. 268. But if it were not so, in all
cases of this kind the minors of the first bed, for all acts of administration pre-
vious to the mother's re-appointment, are always fully secured, either upon
the estate of the second husband (C. C. 272), or by the bond of a dative tutor
(C. C. 330), and in this case, *Paul Molinari* has both guarantees.

The appellant relies on articles 1235, 1236, 376, 377 of the Civil Code, to sus-
tain his second position. These articles do not apply to the case, but are in-
tended to govern minors emancipated otherwise than by marriage. The minor
wife had a right to sue for a partition, and no curator was required to assist her.
Her husband was the proper person to authorise and assist her. A suit for a
partition cannot be viewed as a voluntary alienation, to which the prohibitions of
arts. 375, 377 apply, nor does art. 1236 apply as to the mode of authorisation,
to the minor wife emancipated by marriage. Her curator is her husband. C.
Code, 378, 123 *et seq.*, and 1779. Code P. 106, 107. Art. 1239 of the Civil
Code is conclusive in our favor; it admits of no distinction between the minor
wife, and the wife of age. The right to sue, in a case like this, is clearly es-
tablished in the case of *Hooke v. Hooke*, 6 La. 472. Art. 1240 declares that
the husband can, with the concurrence of his wife, sue for the partition of im-
movable property. See also arts. 368 of the Civil Code; and art. 999 of the
C. P. and amendment thereto. Bullard & Curry, p. 154, sec. 14. The word
"even" in this amendment makes the rule general. As to the alienation, if it
can be so called, by means of the partition—it is clear that it can be made by mi-
nors. Civil Code, 1235, 1236, 1237, 1238, 1239 and 1240. C. P. 1023. In
14 La. p. 22, it is decided that a licitation to effect a partition is not a sale as
between the heirs, and does not change the character of the thing to be di-
vided.

This suit is instituted by two persons: 1st, a minor husband; and 2d, a minor
wife, assisted by her husband, who is of age. Admitting the defendant in the
rule to be correct, in drawing a distinction between these two, as to their right
of demanding a partition, still, it being admitted that the minor husband had that
right, under art. 368 of the Civil Code, the judgment ordering the partition is
valid, for it could have been rendered upon the petition of the minor husband
alone.

The authorisation of the judge, if required at all, in relation to minors eman-
cipated by marriage, is necessarily involved in the judgment rendered, decree-
ing the partition.

It is contended that there should have been an inventory preceding the sale
or partition. Arts. 1246, 1247 and 1248, are quoted. These articles can apply
only to cases where the partition is to be made in kind. The use to be made
of the inventory is shown by articles 1278, *et seq.* Its object is also to enable
the notary to make the collations between the heirs, and this is expressly ex-
cluded from such a case as the one before the court, by art. 1304 of the Civil
Code. This is a licitation; and the rules applicable to it are entirely different.
In licitations the judge "orders a sale at public auction," in which case an in-
ventory is perfectly useless. *Cessante ratione legis, cessat ipsa lex.* Of what
use could the inventory be? Why take an inventory of a single town lot, fully
described in the petition and judgment, and ordered to be sold for cash, when
the proceeds are to be distributed equally among the heirs, without collation?
It would have been a work of entire supererogation. Even an appraisement, in
cases of licitation, can have no effect. *Jacobs v. Lewis*, 8 La. 179. *Fowle v.
Weekes*, 7 La. 312. Civil Code 339, 1863.

Even did the technical informalities spoken of exist, the minor is bound, and
could not disturb the purchaser. *Michel v. Michel*, 11 La. 154. *Lallane v.
Moreau*, 13 La. 433. *Tolmie v. Thompson*, 2 Pet. 106. The purchaser can-
not refuse to take the property and pay the price. The sale was a judicial one.
In judicial sales the purchaser cannot withold the price, unless he is disturbed
in his possession. *Abat v. Vallet*, 3 Mart. N. S. 220. *Stille v. Brownson*, 5

Ib. N. S. 47. *Foster* v. *Murphy*, 5 Ib. N. S. 82. *Collins* v. *Daly*, 4 Rob. 113. *Freret* v. *Meux*, 9 Rob. 416. See also C. P. 710 and 711. It is true that in judicial sales, made to effect partitions, the rules of warranty are different from those of sales made under *fi. fa.*; but all judicial sales possess in common this feature, that the adjudication is a complete title to the purchaser. Civil Code, arts. 2594, 2598, 2601. See also C. C. 2535 *et seq.*

MOLINARI
*v.*
FERNANDEZ.

The judgment of the court was pronounced by

ROST, J. The defendant has appealed from a judgment condemning him to comply with the terms of an adjudication of real estate, and prays for its reversal, on the following grounds:

1st. The property was sold under a decree rendered in an action of partition, which had been instituted by two of the heirs against their mother, as tutrix of the other heir. The plaintiffs were both minors, and, although married, it is alleged they could not sue for a partition of real estate, without the authorisation of the judge, given on the advice of a family meeting.

2d. The mother of the defendant had lost the natural tutorship, by marrying without having been legally authorised to retain it, and another tutor had been appointed. This tutor, and the second husband, both died; a family meeting advised that the mother should be re-appointed tutrix, and she was so appointed, but did not give bond. The appellant contends that she could not act until that formality was complied with, and that she did not represent the minor in this suit.

3d. It is further alleged that the appraisement made before the sale, is not such as the law requires in cases of partition.

Art. 368 of the Civil Code is an innovation on the former laws on the same subject. It authorises the husband under age to appear in court in all cases, and was intended as an exception to the dispositions of arts. 1235, 1236, 376, 377 of the Civil Code, relied on by the defendant. Those dispositions apply now to cases of ordinary emancipation only. The amendment to art. 999 of the Code of Practice, found in the 22d sec. of the act of 1828, amending various articles of the Codes, gives a similar power to the wife under age, provided she be authorised by her husband. Session Acts, p. 154.

The rule that all persons except the father and mother shall be bound to give bond before they can act as tutors, is general in its terms, and there is no warrant of law for making a distinction in cases like the present. Under art. 950 of the Code of Practice, the judge was authorised to appoint the defendant tutrix, without the advice of a family meeting; the circumstance that she submitted her application to them, and was decreed worthy of the trust, cannot impose additional burthens upon her.

The appraisement made before the sale was in the usual mode in cases of seizures under execution, and satisfies the requisitions of the law. When a licitation takes place, there is no notary designated before whom the inventory and appraisement can be made. Those formalities only take place in partitions in kind.

There is no error in the judgment appealed from.

*Judgment affirmed.*