Statement of the Case.
NIOHOLLS, J.
Plaintiffs sue to compel the specific performance by the defendant of its obligations as the adjudicatee at an auction sale made in a partition suit.
„ The district court rendered judgment in favor of the plaintiffs, and defendant appealed. The plaintiffs prayed in the Supreme Court that the judgment be amended by granting, in conformity with the prayer of the petition, 6 per cent, interest upon the cash part of price, to wit, $15,333.33% from date of adjudication (March 17, 1904) until paid.
Appellant has submitted his side of the case on brief, and from it we copy the following statement as to the issues upon which it relies for a reversal:
“On January 5, 1903, in the suit entitled ‘Mrs. Fannie T. McCan Tobin et al. v. M. T. Stempel, Guardian,’ No. 69,737, Civil District Court (Division D), the plaintiff in that suit, who is the same plaintiff in this suit, alleged substantially that her father, Charles P. McCan, married Mary Tobin; that he died, and his sole heirs are his four surviving children of said marriage, viz.:
J‘(l) Kate Elizabeth McCan, born February 25, 1882, now the wife of Courtland Young;
“(2) The petitioner, Fannie Tobin McCan, wife of Leonard M. Tobin, born April 14, 1883;
“(3) David C. McCan, bom July 9, 1884; and
“(4) Charles P. McCan.
“That their mother, Mary Tobin, widow of Charles P. McCan, married Edward Stempel, and removed to New York, where she was appointed guardian of her four minor children. *
“That petitioner’s grandfather, David C. McCan, and his wife, Hester C. McCan, died, leaving as sole and only heirs the four children of their predeceased son, Charles P. McCan, above named, and considerable real estate.
“That petitioner is unwilling to remain in indivisión of said property, and in view of the partition she prays for an inventory.
“There was an order rendered for an inventory, which is copied.
“Mrs. Fannie Tobin McCan then filed a petition praying for a partition. She averred that the property could not he divided in kind and must be sold. She prayed for a family meeting for the following purposes, viz.:
“(1) To authorize her to institute and prosecute the partition proceedings ; and
“(2) To determine on a partition in kind or by sale, and to fix the terms of sale.
“The family meeting was held, and recommended that the petitioner be authorized to ‘institute the partition proceedings and conclude the same to final determination,’ advised a sale of some properties, and fixed the terms and conditions of sale.
“There was judgment rendered in accordance with said family meeting, authorizing the plaintiff to institute the partition proceedings and decreeing a sale.
“The sale was made, and certain property was adjudicated to the defendant. The adjudi *198 catee refused to comply, when this suit was brought against it.
“There was judgment in favor. of plaintiff, and defendant appealed.
“Defendant avers that it cannot take the title for the following reasons, to wit:
“ ‘(1) That no family meeting authorized the ■said Fannie M. Tobin to sell said property.’
“Our contention is that the plaintiff could neither sue for a partition nor sell the property without a family meeting; that the family meeting which attempted to authorize the plaintiff to do all these things was without an under-tutor to the plaintiff, and therefore illegal as to her.
“The Civil Code (article 1313) provides:
“ ‘Minors who are emancipated to enable them to administer their estate can, with the same authorization [authorized by the judge on the advice of the family meeting] and with the assistance of their curators ad lites, sue for the partition of property in which they are intorGstsd *
“Civ. Code, art. 276: ‘The under tutor cannot be a member of family meetings, but he must be present for the purpose of advising, etc.’
“The absence of an undertutor from a family meeting renders its deliberations null. Stafford v. Villain, 10 La. 328.
“Plaintiffs petition for a family meeting avers:
“ ‘Now your petitioners aver that special tutors ad hoc and curators ad hoc should be appointed to represent each of her co-heirs who are absent from the state, and that an under-tutor ad hoc should be appointed,’ etc.
“The prayer is ‘that Charles J. McMurdo, Jr., be appointed undertutor ad hoc herein.’ .
“The order is: ‘Let C. J. McMurdo, Jr., be
appointed undertutor ad hoc to the minors herein named.’
“In the family meeting the notary recites : ■“And also came and appeared Charles G. Mc-Murdo, Jr., the undertutor ad hoc of the minors, David Chambers McCan and Charles Patterson McCan, appointed and sworn as such by the court.’
“As there was no undertutor appointed to said minor, Fannie Tobin McCan, wife of Leonard M. Tobin, plaintiff herein, and as none appeared in her behalf before said family meeting, it follows that said family meeting was absolutely null and void as regards her right to sue or sell.
“ ‘(2) That neither the tutrix of the minors, David Chambers McCan and Charles Patterson McCan, nor the agent of the tutrix of said minors, ever called any family meeting in behalf of said minors, nor asked the homologation of any family meeting held, by reason of which the family meeting held in behalf of said minors and the judgment homologating the same are null and void.’
“When minors are defendants in a partition suit, it is necessary that a family meeting be held to fix the terms and conditions of sale. Civ. Code, art. 1341 (1263).
“This family meeting must be called by the tutor, or the tutor must join in the prayer for the homologation of its deliberations.
“There can be no valid family meeting without the suggestion or approval of the tutor.
“ ‘(3) That neither Charles P. McCan nor his children were the sole heirs of David C. McCan and his wife, Hester C. McCan; that they had another son, named John McCan, whose death has never been proved.’
“This is established by the affidavit of David C. McCan.
•‘John McCan was 21 in 1867. He is therefore now only 59 years of age The Civil Code (article 70) provides that it is only after 1U0 years after the birth of the absentee that the heirs can cause themselves to be put in possession of his estate. Until the lapse of that time the heirs cannot sell his property. Civ. Code, art. 69 (70).
“(4) That there is a mortgage on said property, resulting from a judgment rendered by the United States Circuit Court against Mrs. M. G. T. Stempel, as guardian of her minor children, Kate Elizabeth McCan, Fannie Tobin McCan, David C. McCan, and Charles P. McCan, for the sum of $25,000.
“Defendants pray that the judgment of the lower court be reversed, and that there be judgment in their favor rejecting plaintiff’s demand.”
Opinion.
The authority of the plaintiff in the premises was not made by law to rest as defendant believes it was, upon the action of the family meeting which was convened by the judge. Though she was a minor, she was emancipated by marriage and instituted the suit, aided and assisted by her husband, being also authorized by the court The sale at which defendant became adjudieatee was made in a partition proceeding over which the court had jurisdiction, and under its decree the defendant has nothing to fear from the plaintiff in the future. Molinari v. Fernandez, 2 La. Ann. 553; Richardson v. Richardson, 38 La. Ann. 642.
2. It is true that neither Mrs. M. G. T. Stempel, the mother and the guardian of the two minors, David C. McCan and Charles P. McCan, nor the agent in Louisiana of said guardian, called any family meeting in behalf of the minors, nor asked for the homologation of any family meeting held on behalf of said minors; but, as appears from the minutes of the court, a judgment by default was taken against the said guardian (who *199 had removed to and was residing in New York) on the 5th of June, 1903. It was proper for the guardian or her agent, on being made a party to the proceeding, to have asked for the convening of a family meeting to fix the terms of sale so far as the minors were concerned. On his failure so to do the court was authorized, of its motion or upon the application of any of the parties in interest, to have a family meeting convoked for such a purpose. The other parties to the litigation were entitled to have the sale made, and could not be forced to depend upon the guardian’s taking action in the matter or not as she might think proper. The plaintiff in her petition for the partition prayed that a family meeting be convoked for the purpose. Joseph Brewer, the special tutor ad hoc for the minor David O. McCan, in his answer in the case, prayed, in the event a sale of the property should be ordered, that it be sold, so far as that minor’s interest was concerned, on such terms as might be recommended by the family meeting which might be convened on behalf of the minor, praying for all orders needful in the premises.
Bruen, the curator ad hoc and tutor ad hoe of the minor Charles Patterson McCan, attended the family meeting which fixed the terms of sale on behalf of both minors, as did also Joseph Brewer, and made no opposition thereto, while Charles McMurdo, Jr., the undertutor ad hoc of the two minors, concurred in and gave his approval to the recommendations of the family meeting, fixing the terms of sale as to both minors.
The procés verbal of proceedings of the meeting were submitted by the plaintiff to the district judge, with a prayer that they be homologated, and they were so homologated. Brewer, the special tutor ad hoc of the minor David Chambers McCan, was replaced by L. L. Labatt, and the' latter and also Bernard Bruen both join in the present proceeding, seeking to compel the defendant to comply with its bid, as does also Court-land H. Young, the present agent and attorney in fact of Mrs. M. G. T. Stempel, guardian.
In Bruhn v. Building Association, 42 La. Ann. 483, 7 South. 556, the plaintiff in the partition suit prayed for the calling of a family meeting on behalf of his minor coheirs to fix the terms of sale, and the same was called on his prayer. The family meeting fixed the terms, and the undertutor concurred in the recommendations.
On joint petition of the plaintiff and the tutrix, the proceedings were approved and homologated, and the sale took place. On the refusal of the purchaser to accept title, he was compelled to do so in an action for specific performance; the court declaring that, as in Duruty’s Case, 42 La. Ann. 362, 7 South. 555, the purchaser who paid the price under such a sale was not concerned in further proceedings in partition of the price between those interested therein, and that it thought the title good.
Article 1341 of the Civil Code, referring to the family meeting to be held to fix on behalf of minors the terms of sale, says that at the instance of the tutors and curators of such minors the judge may call a family meeting; but we do not understand that by the use of these words it was the intention of the lawmaker to make the calling of the meeting by the judge dependent upon the fact that the petition for that purpose should be made in the name of the tutors or curators of the minors. Those words were simply used as being the parties most likely to ask for the family meeting. The fact that the judge “may,” at the instance of the tutors and curators, call the meeting, was not intended as excluding authority in the judge to do so at the instance of other parties in interest or of his own motion. No objection is raised in this instance as to the formation of the meet *200 ing, nor is any reason given why the particular meeting which was called would not and did not do its duty.
3. Defendant contends that there is danger of eviction from the possible reappearance of John McCan, a son of David O. McCan and Hester O. McCan, who disappeared in 1867; he being then 21 years of age. Counsel say:
“He is therefore only 59 years of age. Civ. Code, art. 70 (69), provides that it is only after 100 years after the birth of an absentee that the heirs can cause themselves to be put in possession of his estate. Until the lapse of that time the heirs cannot sell his property.”
It appears from the testimony that in the summer of 1867 David McCan engaged passage for his son John in a Norwegian vessel bound for Liverpool and from Liverpool to Norway; that his son was placed in the charge of the captain of said vessel and his family, who accompanied him on the voyage; that the said vessel was loaded in Liverpool and proceeded on her journey to Norway, and while in the North Sea was overtaken by a storm of unusual violence, and was after-wards found bottom up and without a vestige of life upon her; that the said David C. McCan, after long-continued and diligent search and inquiry, was unable to ascertain that any one had survived said catastrophe, and that no news thereafter was ever received of said John McCan, nor of the captain, nor of his family, nor any of the crew of the said vessel; that said John McCan was fond of his mother, who was devoted to him; and that there was no reason why, had he survived said shipwreck, he should not have returned to his home and to his parents.
Counsel of appellees urges that, while absence alone of a person does not raise a presumption of his death, such absence in combination with surrounding circumstances, such as failure by his family and friends to learn of his whereabouts, etc., create a very strong presumption of death; the law being satisfied with less than certainty. Sensenderfer v. Pacific Mut. Life Ins. Co. (C. C.) 19 Fed. 68; Northwestern Mut. Life Ins. Co. v. Stevens, 71 Fed. 258, 18 C. C. A. 107.
The court is referred on this subject to Succession of Vogel, 16 La. Ann. 139, 79 Am. Dec. 571, Boyd v. New England Ins. Co., 34 La. Ann. 848, Succession of Jones, 12 La. Ann. 397, Jamison v. Smith, 35 La. Ann. 609, Sterrett v. Samuel, 108 La. 347, 32 South. 428, and Martinez v. Wall, 107 La. 737, 31 South. 1023.
We are of the opinion that the defendant had nothing to apprehend from the reappearance of John McCan; for, should he reappear (as said in the Martinez Case), while he would be entitled to urge a claim against his co-heirs, he “would do so without prejudice to the rights of third parties.”
4. “There is a mortgage resting on the property in favor of the United States for $25,000, resulting from the judgment in the matter of United States v. Smythe.”
On this last point, appellee’s counsel say that the court will find evidence in the record of the payment of the judginent referred to, to the extent of $23,318, and a release by private act (No. 505 of 1905) of Congress, for any amount above that sum. We find that an admission was made below of the payment of the sum mentioned, and we find attached to the record a copy of the act referred to. We do not understand that these facts are now disputed.
Counsel further quote from decisions of this court to the effect that:
“In case a judicial sale of real estate is made to effect a partition by licitation between coheirs, some of whom are minors, the title free from incumbrance will pass to a purchaser upon his paying the whole of the purchase price into the registry of the court, until the share of the proceeds coming to the minors shall have been legally reinvested,” etc.
We are of the opinion that the title tendered by the plaintiff to the defendant is a good one, and that defendant should comply with its obligations as adjudicatee. We are of the opinion that the amendment of the judgment *201 prayed for by appellees, to the effect that defendant should be charged with interest on the cash portion of the price from the date of adjudication until payment, should be granted, but that legal interest, and not interest at 6 per cent, should be recovered. Duruty v. Musacchia, 42 La. Ann. 362, 7 South. 555.
In the situation in which we find the succession,' we think it advisable that the purchase price should be deposited in the registry of the court, to be withdrawn under legal proceedings hereafter to be taken according to law.
For the reasons assigned herein, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is, amended by charging the defendant with, and entitling the sellers of the property to recover, legal interest on the cash portion of the purchase price from the date of the adjudication until paid, and requiring that the in-ice of the property be deposited in the registry of the court, to be withdrawn therefrom, under- legal proceedings hereafter to be taken according to law, and, as so amended, the judgment appealed from is affirmed; costs of appeal to be paid by appellant.