Statement of the Case.
MONROE, J.
Defendant has appealed from a judgment condemning him to accept title to certain real estate which he had agreed to purchase from plaintiff, and the title to which he subsequently rejected on the ground that it is defective, unmarketable, and suggestive of litigation. He alleges various defects, but has confined himself in this court to the objection that in certain assessments, upon which were predicated tax sales forming links in plaintiffs’ chain of title, the property was insufficiently described for the purposes of its identification. The case was tried in the district court upon .an agreed and articulated statement of facts, to the relevancy and admissibility of any and all of which counsel for plaintiff reserved the right to object when the statement should be offered.
■ The facts so admitted, which appear to us to be relevant to the immediate question here at issue, were as follows:
On February 25, 1907, plaintiff acquired, by purchase from William King, a square of ground in the Third district of this city, described as square No. 1373—
“bounded by Law, Annette [formerly Antonia], Dorgenois [formerly Magistrate], and St. Anthony streets; said square measuring 320 feet, 8 *564 inches, and 5 lines on each of Law and Dorgenois streets, 320 feet, 1 inch, and 7 lines front on Annette street, and 320 feet, 1 inch, and 4 lines front on St. Anthony street.”
King had acquired the square by purchase from Mrs. Guedry on September 6, 1906; Mrs. Guedry had acquired it by purchase from the United States Land Company on December 26, 1905; the United States Land Company had acquired it by purchase from Miss Brennan on September 20, 1904; and Miss Brennan had acquired it from the state of Louisiana, acting through the State Auditor, who sold it, as adjudicated property, under Act 80 of 1888, as amended by Act 126 of 1S96 (that is to say, he sold, by four acts of sale, of date August 29,1903, different lots, which, in the aggregate, are said to constitute the entire square); the descriptions in said acts being practically the same as those under which the state is said to have acquired the property, and which were as follows:
“(6) The state of Louisiana acquired at offering made by Charles Cavanac, formerly State Tax Collector of the Second, or Lower, district of the city, under Act No. 96 of 1882, p. 119, when the properties, having failed to sell, were adjudicated to the state of Louisiana, as follows:
“(a) By deed before A. A. Ker, lafe notary, dated March 30, 1885, property described as ‘certain lots in square No. 1373, and are 64 feet front on Antonia street by 128 feet in depth, were adjudicated to the state of Louisiana for unpaid taxes of 1882, 1883, assessed to P. E. Wiltz. * * * ’
“(b) By another deed, before same notary, dated March 3, 1885, property described as ‘20 certain lots of ground and improvements in the Third district of New Orleans, in square 1373, bounded by Law, St. Anthony, Antonia, and Magistrate streets, said lots measure and front on Law street, forming the corner of Law and St. Anthony streets, were adjudicated to the state of Louisiana for unpaid tax of 1882, assessed to James Patton. * * * ’
“(c) By another deed, before the same notary, dated March 6, 1885, property described as ‘one certain lot of grounds and improvements hereon in the Third district of the city of New Orleans, in square No. 1373, bounded by Antonia, St. Anthony, Law, and Magistrate streets; said lot measures 32 feet front on Antonia street by 128 feet, 1 inch, in depth, was adjudicated to the state of Louisiana for unpaid taxes of 1882, assessed to Henry Mathieu. * * * ’
“(d) By another deed, before the same notary, dated March 3, 1S85, property described as ‘certain lots of ground and improvements thereon, in the Third district of the city of New Orleans, in square No. 1373, bounded by Law, Antonia, St. Anthony, and Magistrate streets, said lots measure 64 feet front on Law street by 128 feet in depth, forming the corner of Law and Antonia streets, were adjudicated to the state of Louisiana for the unpaid tax of 1883, assessed to P. E. Jourdan.’ ”

It is admitted that in 1854 different lots in the square in question were assessed in the names of Pierre E. Jourdan, Henry Mathieu, Santos, Saloy, and Doriocourt and James Patton; that in 1857 the assessments were in the names of Pierre E. Jourdan, Henry Mathieu, and James Patton; and that from 1868 to 1885, inclusive, they were as follows:
Pierre E. Jourdan....................64x128
Henry Mathieu.......................30x128
James Patton........................20 lots
P. E. Wiltz..........................64x128
According to the admission, the records of the conveyance office do not show that Patton ever acquired any lots in square 1373; but it appears that Book 17, containing the entries during the years 1S36 and 1837, has been lost, and Books 16 and 18, and some later books, show that a person by that name acquired property in other squares. The ad *566 mission includes a sketch (to which plaintiff interposed an objection of irrelevancy) from which it appears that, at the date of the adjudications to the state with which we are here concerned, the square in question was subdivided and the lots were owned and had been acquired at the dates as indicated, a rough copy of which sketch is attached to he incorporated in this opinion. How it happens that the sketch shows a square of different dimensions from those given in the sale from King, whereby plaintiff acquired the property, and lots of different dimensions from those described in the adjudications to the state, does not appear. It is further admitted that:
“(20) Said square is now vacant, and, as far as the parties herein know, has always been vacant.
“(21) As far as the parties herein know, none of the persons named in the annexed plan were ever in possession of said properties herein; nor, as shown by the tax records, have any of them paid any taxes on said properties since 1880.
“(22) Since the year 1880, no taxes were paid on said properties, or any of them, except the amount claimed by the state and paid by Miss M. A. Brennan, for the taxes for which said properties were adjudicated to the state, as also the taxes for the years 1883 to 1902, inclusive, as also the amount paid to the State Tax Collector. which amount is, as stated in the said auditor’s deed, for the costs and charges for enforcing Act 80 of 1888, as evidenced by the auditor’s deed to her, above recited, and the plaintiff herein, or her authors in title, paid the taxes for the year 1903 to date.”
Opinion.
Plaintiff’s objections to the sketch included in the statement of facts, when offered in evidence, and to certain other admissions of fact included in said statement and offered for the purpose of showing that the assessments under which the property in question was adjudicated to the state were defective, because made in the names of persons not the owners of, or because they failed to identify, the property, were based upon the ground that such defects, if any there be, have been cured by certain terms of prescription, including that of three years, established by article 233 of the Constitution, and that of ten years, established by Act 185 of. 1904.
[1] The Constitution provides that:
“No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold, prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired; or, within three years from the adoption of this Constitution, as to sales, already made, and within three years from the date of recordation of the tax deed, as to sales made hereafter, if no notice be given.” ■
The tax deeds under which plaintiff claims title were recorded August 29, 1885, and it is not suggested that any proceeding to annul them has ever been instituted; nor is there any suggestion of a dual assessment of the property, or that the taxes for which the property was sold had been paid prior to the sales. In construing the foregoing provision of the Constitution, this court has held that the prescription thus established does not run against an owner who is allowed to remain in undisturbed possession; but it is admitted that no such condition has existed in this ease. It has also been held that the provision in question has no application to a case where the assessment and tax sale fail to identify the property or to furnish the means of reasonable identification. The constitutional prescription of three years has been supplemented by a statutory prescription of ten years, established by Act 185 of 1904, which reads, in part, as follows:
“Section 1. * * * That any person or corporation * * * claiming immovable property under a deed made by a * * * tax collector •s * * which has been on record for more than ten years, and is, or purports to be, founded on a forfeiture for taxes, * * * or conveys or purports to convey an interest or title in such property, acquired or pretended to have been acquired by the state, under a tax forfeiture, whether such forfeiture actually took place or not, shall, after the expiration of three years from the passage of this act, be held and deemed *568 to be the absolute owner of the property described in such deed: Provided, they or their authors shall have paid, or- do pay, all taxes assessed against said property for such period of thirteen years; and no court in this state shall thereafter entertain any suit to cancel or, in any wise, affect the title of any person or corporation claiming by, through, or under such deed. Sec. 2. * * * That the provisions of section 1 of this act shall not apply whenever the original owner of such property is, at the time of the passage of this act, in the actual, physical, adverse possession of the same, nor when such original owner shall have paid the taxes assessed against such property for any one year within ten years prior to the passage of this act, or shall, within three years after the passage of this act, institute a proceeding to cancel such tax deed or forfeiture as a cloud upon his title.”
It still remains that, as an- alleged assessment, which neither identifies nor furnishes “the means of reasonable identification” of any -property, assesses none, so a tax deed, which is similarly deficient, conveys title to nothing, no matter how long it may remain unchallenged upon the public records.
In this case it would appear that the original owner of the square in dispute laid it off, in his own mind or on paper, into 12 lots, with a frontage each of 60 or 64 feet, by a depth each (with the exception of the two key lots) of 120 or 128 feet, between parallel lines, as the dimensions of the square were 300 or 320 feet. Such a subdivision, we take it, was rather unusual, as the common practice is to lay off squares into lots having a frontage of 30 feet each. But the owner had the right to do as he pleased, and so had his ven'dees. Banks, for instance, having purchased two or three of the 60 or 64 foot lots, divided them into 30 or 32 foot lots. Wiltz, on the other hand, bought two of the lots, which were lying contiguous to each other, and allowed them to remain as they were. The assessor, dealing with a vacant square, which showed no signs of subdivision, had never been actually subdivided, and was, as we infer, of but little value, and, finding that different persons owned different portions of it, proceeded to assess it, partly upon the basis of the original plan, where he supposed there had been no later subdivision, and partly upon the basis of its subdivision into 24 lots, having each its proportionate frontage, but not always undertaking to determine the number of lots held by each owner.
Thus Wiltz, who owned two lots, according to the original plan, was assessed upon “certain lots in square 1373, * * * 64 feet front on Antonia street by 128 feet in depth”; Jourdan, who had but one lot of 30 feet, according to a later subdivision of one of the original lots, was also assessed upon “certain lots * * * in square 1373 * * * 64 feet front on Law street by 128 feet in depth, forming the corner of Law and Antonia streets”; Mathieu, who was similarly situated, was assessed on “one certain lot * * * in square 1373 * * * 32 feet front on Antonia street by 128 feet, 1 inch, in depth” ; and Patton, who had been assessed on property in that square since 1854, and whose title would, no doubt, be found in the lost Book 17, was assessed on “20 lots * * * in square 1373; * * * said lots [says the description] measure and front on Law street, forming the corner of Law and St. Anthony streets.”
Wiltz’s assessment, then, on “certain lots” included the two lots acquired by him according to the -original plan, Jourdan’s assessment on “certain lots” included the one 30-foot lot acquired by him, and Mathieu was assessed on one such lot, so that, assuming that the assessor considered both the original and the later plans, the parties named were assessed on four lots, and the assessment to Patton, of 10 lots, necessarily included the balance of the square. We are therefore of opinion that, while the assessments and adjudications to the state were defective in that they failed, of themselves, to identify the proper *570 ty, they nevertheless furnished the means of reasonable identification, and that the title under which plaintiff holds said property, which has been recorded and has remained unattacked for nearly 28 years, is now proof against attack upon the ground thus considered, and may safely be accepted.
[2] Defendant urges that, in any event, he had reasonable grounds of apprehension, and that the title tendered could hardly be considered marketable until sustained by a judgment of court, and hence that he ought not to be condemned to pay interest on the price, save from the date of such judgment. That view has beenHaken by this court in the cases of Duruty v. Musacchia, 42 La. Ann. 360, 7 South. 555, and Tobin et al. v. U. S. Safe Deposit & Savings Bank, 115 La. 366, 39 South. 33, and we are of opinion that equity authorizes its adoption for the purposes of this case.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be so amended as to allow legal interest on the amount awarded from August 23, instead of January 18, 1911, until paid, and, as thus amended, affirmed; plaintiff to pay the costs of the appeal.