### (86 South. 406)

### No. 22613.

### FELLMAN v. KAY et al.

(June 30, 1920. Rehearing Denied Nov. 3, 1920.)

*(Syllabus by the Court.)*

1. **Taxation** ⬉�señ790—**Proceeding construed as one to bar owner's suit to annul tax deed.**

In a proceeding brought under the provisions of article 233 of the Constitution of 1898, and Act No. 101 of that year, passed to carry out its purposes, the issue of the validity, vel non, of the tax deed is not tendered. The only issue tendered is the right, vel non, of the plaintiff to a decree (after the lapse of 6 months or 10 days, as the case may be), forever debarring the former owner from suing to annul the tax deed, however void or voidable it may be.

2. **Taxation** ⬉➦816—**Proceeding based on tax deed held not conclusive as to its validity or invalidity.**

A judgment, rejecting the plaintiff's demand in such a proceeding, may be res adjudicata as to his right to shorten the time within which a suit may be brought to annul the tax title, but it can never be res adjudicata as to the validity or invalidity thereof.

3. **Taxation** ⬉➦796(1)—**Nature of proceedings to determine validity of tax title stated.**

The latter issue can only be tried out (so long as the tax purchaser is in actual or constructive possession) by an independent suit brought by the former owner, or by way of reconvention in a suit brought against him by the tax purchaser to confirm. In either case it is the former owner who must tender the issue on which a judgment can be rendered which will constitute res adjudicata as to the validity or invalidity of the tax title.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Suit by Mrs. B. Fellman against R. Kay and others. From the decision dismissing a rule taken by the Interstate Land Company against plaintiff to procure a judgment canceling an inscription in the conveyance office of a tax deed under which plaintiff claims, defendants and plaintiff in rule appeal. Affirmed.

Frank L. Richardson and F. Rivers Richardson, both of New Orleans, for appellant Interstate Land Co., Limited.

Hall, Monroe & Lemann, of New Orleans, for appellee.

In this cause, his honor, the Chief Justice, and his honor, Mr. Justice SOMMERVILLE, having recused themselves, and the court having invited Judge H. C. CAGE, Judge of the Civil District Court for the parish of Orleans, and Judge JULIAN MOUTON, Judge of the Court of Appeal, to participate in the hearing and determination of the case, Judge CAGE pronounced the opinion and judgment of the court in the said cause:

In 1836 Edward Hughes was the owner of the square of ground, bounded by Pearl (late Nineteenth), Joliet (late Jefferson), Marks, and Leonidas streets, then in the city of Carrollton, now part of the city of New Orleans. The square was divided into 24 lots, numbered from 1 to 24, inclusive. Lots 1 to 10, inclusive fronted on Nineteenth, now Pearl street. Lots 13 to 22, inclusive, fronted on Marks street. Lots 11 and 12 were key lots, and fronted on Leonidas street. Lots 23 and 24, likewise, were key lots, and fronted on Jefferson (now Joliet) street. See diagram of square in Re Interstate Land Co. v. Fellman, 134 La. 539, 64 South. 404.

In the year above stated (1836) Hughes sold the 10 lots fronting on Pearl (late Nine-

teenth) street to one A. H. Clayton; and at the same time he sold the remaining lots in the square, viz. the four key lots, 11, 12, 23, and 24, and the 10 lots, 13 to 22 inclusive, fronting on Marks street, to Robert Kay. Kay was assessed on these 14 lots for a number of years, and for several years paid taxes on them. The lots, however, were in a low, swampy area, of very little value, and he and his heirs either lost sight of them or did not consider them worth the taxes, for the taxes assessed had become delinquent for several years, and in 1884 they were sold for taxes, and were bought in by Mr. F. J. Dreyfous for account of his client, Mr. Bernard Fellman, from whom they descended to his wife, the defendant and appellee in the present proceeding.

In assessing Kay's property, the assessors correctly described the square boundaries, and correctly described the 4 key lots, Nos. 11, 12, 23 and 24; but the 10 lots, 13 to 22, inclusive, were described as fronting on Leonidas street, when in fact Leonidas was one of the side streets, and the lots really fronted on Marks street.

The error of the assessors was repeated in the advertisements and in the tax deed, given the tax purchaser by the tax collector, and recorded in the conveyance office.

In 1907 Mrs. Fellman desired to quiet her tax title as against Robert Kay, if alive, or against his heirs, if dead, under the proceeding granted under article 233 of the Constitution of 1898, and Act No. 101 of the legislative session of 1898, passed in obedience to the mandatory provision of the constitutional article just mentioned, and brought her suit for this purpose in the proceeding known as Mrs. B. Fellman v. R. Kay et al., No. 84204 of the docket of the civil district court for the parish of Orleans, the cause being allotted to division D of that court, then presided over by his honor, Mr. Justice Sommerville, now of this court.

A reading of her petition in this case would indicate that she had become aware of the fact that lots 13 to 22, inclusive, were incorrectly described as fronting on Leonidas street, but that in attempting to retrieve this error she fell into another, by describing them as fronting on Pearl (late Nineteenth) street; this description making her claim, as hers, the 10 lots which Hughes sold to Clayton, and which were then owned by Howcott, under a tax title. Her petition alleged the assessment of the property in the name of Kay; the failure of the owner, or owners, to pay the taxes; the sale by the tax collector under the laws providing therefor; the adjudication to Dreyfous for account of her late husband; the confection of the tax deed by the collector to Dreyfous; its records in the conveyance office; the transfer from Dreyfous to her husband; the death of her husband and her acquisition of the property as widow in community and sole heir; the possession of Dreyfous, her husband, and herself since the tax sale; the lapse of more than 12 months since the registry of the tax deed in the conveyance office, and her inability to find Kay, or his heirs; and, finally, her desire to avail herself of the rights to quiet and confirm her title as against Kay, if alive, or his heirs, if dead, conferred upon her by the constitutional article and the legislative act, hereinabove named.

She prayed for the appointment of a curator ad hoc to represent Kay and his heirs.

She then prayed:

"That the said R. Kay and his heirs be duly cited through the said curator ad hoc to answer this petition, and that they be notified, through the said curator ad hoc, that the title to the property, hereinabove referred to and described, will be confirmed and quieted, unless a process to annul the same is instituted within 6 months from the date of service of the petition and citation herein."

She further prayed that—

After due delays "there be judgment in favor of petitioner, and against the said R. Kay and

his heirs, confirming and quieting the title of petitioners to the said property, hereinabove referred to and described, and recognizing petitioner as the sole and only owner of the said property, and enjoining and prohibiting the said R. Kay and his heirs from claiming or setting up any right, title, or interest in or to the said property or any portion thereof, to wit: [Then follows a repetition of the description, in which the error, above pointed out, is repeated.]"

A curator was appointed on November 8, 1907, who filed a general denial on November 23, 1907. His prayer was:

"That plaintiff be required to strictly prove her demands; failing so to do, that there be judgment in favor of R. Kay et al., defendants, and against the plaintiff, Mrs. B. Fellman, dismissing her demand at her costs, and for general relief."

On November 11, 1908, more than one year after the suit was instituted, Wm. C. Kay, Geo. Kay, C. W. Ross, and Wm. Dowty, alleging themselves to be grandchildren and heirs of Robert Kay, deceased, and defendants in the suit, filed an answer, in which they denied all the allegations of the plaintiff, and especially denied that the plaintiff or her authors bought that property of deceased, Robert Kay, under the tax sale described in her petition. They deny that the property was legally sold at the tax sale, for the reason that no legal or valid description was made thereof which could convey title, and for the further reason that no notice was given to the heirs of Robert Kay, deceased.

They deny that the plaintiff is, or ever was, in possession of the real estate of Robert Kay or his heirs.

Then assuming the position of plaintiffs in reconvention, they allege the death of their grandfather Robert Kay, in 1843, and of his wife, their grandmother, in 1862, "leaving the following real estate belonging to them, in community, viz.: [Here follows a correct description of the property conveyed to Robert Kay by Edward Hughes in 1836.]"

They then allege the nullity of the tax title set up by Mrs. Fellman for numerous reasons, and wind up with a prayer that Mrs. Fellman's demand be rejected, and that "they be given judgment as plaintiffs in reconvention, decreeing them to be the lawful heirs of the late Robert Kay and Mary Druffin, his wife, and as such be placed in possession of said property, hereinabove described with the right reserved to them to sue for all revenues accruing from said property during the unlawful possession of plaintiff herein."

Treating this as the action to annul the tax title contemplated by article 233, Const. 1898, and Act 101 of that year passed to carry out its provisions, Mrs. Fellman then pleaded the prescriptions of 3, 5, 10, 20, and 30 years thereto.

This plea of prescription was never set down for trial, and was not disposed of in any way.

The case went to trial, on the merits, and was argued and submitted to the court for adjudication on May 3, 1909.

On May 10, 1909, the following judgment was rendered, to wit:

"It is ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, Mrs. B. Fellman, and against the defendants, William C. Kay, Geo. Kay, Chas. Wm. Ross, and Wm. Dowty, grandchildren and heirs of the late Robert Kay, recognizing said plaintiff and confirming and quieting her title to the following described property, to wit:

"Lots 11 and 12, measuring together 60 feet front on Leonidas street by 150 feet in depth, and lots Nos. 23 and 24, measuring together 60 feet front on Jefferson street by 150 feet in depth, and enjoining and prohibiting the said defendants from claiming and setting up any right, title, or interest in or to the said above-described property, or any part thereof.

"It is further ordered, adjudged, and decreed that the demand in reconvention be dismissed, reserving the rights of defendants, plaintiffs in reconvention, to file proceedings, on demands contained in said reconventional demand."

This judgment was signed on May 14, 1909, and was never appealed from by any of the parties in interest.

On August 25, 1909, the four plaintiffs in reconvention and six others brought the suit, entitled Mrs. Josephine Delmawt et al. v. Mary Logan et al., No. 90739 of the docket of the civil district court for the parish of Orleans, in which they alleged themselves and four others to be the sole heirs of Robert Kay and his wife, both deceased, and as such owners of the 10 lots fronting on Marks street, and prayed for a partition by licitation, and on October 12, 1909, obtained a judgment as prayed for.

Under this judgment the property was exposed for sale and bid in by and adjudicated to the Interstate Land Company Limited. In pursuance to the adjudication a formal authentic act of sale was made to this company, and was recorded in the conveyance office.

On October 16, 1916, the Interstate Land Company, Limited, took a rule against Mrs. Fellman, in the matter of Fellman v. Kay et al., No. 84204 of the civil district court (the quieting of title suit), hereinabove related, in which the facts set out in this opinion were, in substance detailed, setting up that the judgment in that cause, rendered by Judge Sommerville, annulled the tax title of Mrs. Fellman to the 10 Marks street lots; that the judgment was final and was res judicata, and entitled mover to a judgment, ordering the cancellation of the inscription of the tax title of Mrs. Fellman in the conveyance office.

On these suggestions the court ordered Mrs. Fellman to show cause, on a day fixed, why the inscription complained of, viz. the one registered in C. O. B. 118, fo. 482, on April 10, 1884, should not be canceled and erased "as being null and void so far as the property of mover is concerned."

Mrs. Fellman appeared and excepted to the proceeding by rule. On the same day (reserving the benefit of her exception) she filed an answer to the rule, in which she denied that the Sommerville judgment was res adjudicata as to her tax title to the 10 lots; denied that the Kay heirs were ever recognized by any judgment as the owners thereof; averred that her title thereto was good; averred that the inscription complained of is the basis of her claim to the lots; and especially denied "that the demand to be recognized as owner of the said 10 lots has been rejected," or "that the right of the original defendants in this proceeding to such lots has been recognized and maintained."

She prayed that the rule be dismissed, denied and rejected at mover's costs.

The case went to trial on these pleadings, and on February 2, 1917, the following judgment was rendered:

"The rule to cancel tax inscription pursuant to judgment rendered having been heard and submitted to the court, and the court considering the law and evidence to be in favor of defendants in rule, for the reasons orally assigned,

"It is ordered by the court that said rule be, and same is hereby, dismissed, at cost of mover, the Interstate Land Company, Limited."

—and the mover prosecutes this appeal therefrom to this court.

### Opinion.

We are first confronted with the exception of the defendant in rule to the summary proceeding by rule; but, the entire case being before us, the views we hold on the merits render it unnecessary for us to pass upon the important questions of practice raised thereby.

The solution of the contentions in this case involves a construction of the judgment rendered by Mr. Justice Sommerville (then sitting as district judge) in suit of Fellman v. Kay.

That suit was brought under the provisions

of article 233 of the Constitution of 1898, and of Act No. 101 of 1898, passed to carry out the intent of this article, and no intelligent opinion and decree can be rendered in this case without an examination and analysis of these constitutional and legislative provisions.

Article 233 of the Constitution of 1898, after providing for the sale of property for nonpayment of taxes, and after providing that the property sold shall be redeemable within one year, further provides that—

"All deeds of sale made, or that may be made, by the collectors of taxes, shall be received by courts in evidence as prima facie valid sales.

"No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption is expired, or within three years from the adoption of this Constitution, as to sales already made, and within three years from the date of recordation of the tax deed as to sales made hereafter, if no notice is given. The manner of notice and form of proceedings to quiet tax title shall be provided by law."

In obedience to the constitutional mandate the Legislature which met in 1898 adopted and passed act 101 of that year, entitled, "An act to provide a manner of notice and form of proceeding to quiet tax titles in accordance with article 233, of the Constitution."

This act provides that after the lapse of 12 months from the date of recording the tax deed in the conveyance records of the parish where the property was situated, the tax purchaser or his heirs or assigns may institute suit by petition and citation, as in ordinary actions, against the former proprietor or proprietors of the property, in which petition must appear a description of the property mentioned in the deed, the place of sale and

name of the officer who made the same, reference to the page of the record book and date of recording the tax deed, notice that the petitioner is the owner of said property by virtue of said tax sale, and notice that the title will be confirmed, unless a proceeding to annul is instituted within 6 months from date of service of the petition and citation. It provides, further, that the petition and citation shall be served as in ordinary suits, and that a curator ad hoc may be appointed to represent former unknown absent owners or their heirs. It then provides:

"After the lapse of six months from service of petition and citation, if no proceeding to annul the sale has been instituted, judgment shall be rendered quieting and confirming the title."

Section 3 of the act provides:

"That in all cases where tax titles have been quieted by prescription of three years, as set out in said article 233, the purchaser or his assignee may if he so desires, obtain a judgment of the court confirming said title, same to be done by suit in the manner and form, as above set out, except that the delay for answer shall be ten days instead of six months; provided that the failure to bring said suit shall in no manner affect said prescriptive titles."

It is thus clear that it was the intention of the constitutional convention of 1898 that tax titles unassailed after three years after recording the tax title in the conveyance office shall be unassailable by the former owner, or his heirs or assigns, unless the action to annul were brought within three years. In other words, that the lapse of three years without the institution of suit should forever bar an action to annul, except only in cases where the taxes had been paid, or a dual assessment had occurred.

It is equally plain that it was the intention of the Legislature, under the constitutional mandate imposed upon it, to give the right to the tax purchaser to shorten this

three year prescriptive bar to six months by the proceeding authorized by section 1 of act 101 of 1898. In other words, where the tax purchaser was not willing to sit still and wait until the three years had passed, he could present his tax deed, which, under the Constitution, was prima facie valid, to the court of competent jurisdiction, and provoke a notice from the court to the former owner of the property that he claimed ownership by virtue of his tax deed, and call on him to bring his action to annul, if any he had, within six months or forever be debarred from bringing it.

[1] It is plain that, when the tax purchaser avails himself of this proceeding under section 1 of the act, he does not place at issue the validity vel non of his tax title; he simply invites assault thereon; and it is equally clear that if no action to annul be brought within six months, the only judgment that the court is authorized to render is one quieting and confirming the title by rendering a judgment against the former owner, forever barring and prohibiting him from assailing the tax deed, for the sole reason that he has not brought his action to annul within the six months allowed therefor.

It is quite clear that this suit to annul can be brought by the tax debtor either by an independent suit in that court or some other court of competent jurisdiction, or can be brought by way of reconventional demand, in which whatever invalidities or nullities there be in the tax title can be set up and prayer made for the annulment of the tax deed.

In Ashley Co. v. Bradford et al., 109 La. 653, 33 South. 639, this court said:

"The constitutional provision under consideration does not seek to validate void or voidable tax titles. It does not merely prescribe a time within which a bad title may ripen into a good one. It does not establish a rule of prop-erty. Its object and effect is to bar by limitation the owner's remedy, if the time be suffered to elapse without suit. It bars all grounds or causes of action for setting aside the tax title save the two excepted from the operation of the provision. The constitutional provision takes nothing away—neither the right nor the remedy. It merely limits the time within which the original owner must present his claim. It really affirms the existence of a remedy, but limits its operation. The negligent owner is cut off by limitation because he failed to prosecute the remedy limited.

"Such laws are enacted under the sovereign power of the state to limit within reasonable bounds the time for which its courts shall remain open for the adjustment of controversies, and when the time is not unreasonably short they are grounded in sound policy."

Further on in the same opinion the court went into the consideration of the history of this legislation and the evils which it was intended to remedy, the court saying:

"The letter and spirit, alike, of the constitutional provision support this view, as do likewise the situation, conditions, and exigencies out of which it grew, and which influenced the framers of the organic law to bring about its enactment.

"In part and in brief these were the general knowledge that in the aggregate vast areas of land in the state had been practically abandoned, or forfeited to the state for nonpayment of taxes by the record owners; that these forfeitures had been going on for a quarter of a century or more; that the lands affected by the same were contributing nothing to the support of the state and parochial government, the discharge of the public indebtedness, or to the maintenance of the levee system; that the grants made in the alluvial districts by the Legislature to the boards of levee commissioners were rendered largely unavailing because of the doubt and uncertainty hanging over the title to much of the lands included in the grants; and that tax titles were more or less in a chaotic state, and the jurisprudence of the state relating thereto uncertain and unsatisfactory.

"Private ownership of the lands affected by this condition of affairs was what was aimed at, to the end of their settlement and improvement, the development of their resources, and making them contribute to the support of the fisc. But owing to the precarious character of

the ordinary tax title, in the popular mind, this presented a problem of much difficulty.

"So the framers of the Constitution cast about to devise some method of solution, some way of creating public confidence in the validity of the tax titles affecting the lands referred to, and in the validity of tax titles generally, and the result of their labors was embodied in the second clause of article 233 of the Constitution. It was intended to announce a future public policy of the state with reference to tax title tenure of lands.

"By article 233 the people of the state, acting through the convention which framed the Constitution, meant to provide a prescription or pre-emption which would operate to quiet tax titles, and thereby settle the ownership of property acquired through them.

"As a statute of limitation it was intended to have a more far-reaching effect than what Act No. 105 of 1874 had been allowed by the courts to have.

"The great majority of the members of the constitutional convention were lawyers familiar with the tax laws, the adjudications of the courts thereon, and the doubt and uncertainty surrounding and attaching to tax titles.

"They meant to put an end to this uncertainty, and did so by the adoption of article 233. By its enactment they intended to give warning to owners of property that they must look after and keep up with the same in respect to assessment for taxes and payment of taxes, and that if they failed to do so and the property appearing upon the assessment rolls was proceeded against for nonpayment of taxes and sold and the title of the purchase recorded, the owner must, at his peril, bring his suit within the time prescribed to set it aside, and if he did not he must forever thereafter hold his peace, except as to the two causes which the article excludes from the operation of the prescriptive limit.

"The law may in individual cases now and then work a hardship, but it is sound in principle, * * * and will, it is thought, redound to the public good."

It follows, therefore, that when Mrs. Fellman brought her suit against Robert Kay, if alive, and his heirs, if dead, she did not tender the issue to them of the validity, vel non, of her tax title; she only gave notice to the defendants that she claimed to own the property by virtue of the tax title prima facie valid, and that, if they did not bring suit to annul it within six months from date of service of the petition and citation, judgment would be rendered against them, forever debarring them from so doing.

Four of the alleged Kay heirs did make an appearance, and did, as plaintiffs in reconvention, assail the legality and validity of the tax title held by Mrs. Fellman, and prayed for judgment rejecting her demand for a decree that would debar them from assailing the tax title, and for a further judgment decreeing them to be the lawful heirs of Kay and his wife, deceased, and putting them in possession of the property.

As before said, the judgment of the district court gave Mrs. Fellman the relief she asked under the constitutional article and the legislative act as to the 4 key lots. It neither granted nor rejected her prayer as to the 10 lots alleged by her to front on Pearl (or Nineteenth) street.

[2] If the failure to grant the relief prayed for by silence be a rejection of her demand, then it is only res adjudicata as to her demand for judgment limiting the time within which the heirs of Kay could bring their action to annul her title to any of the Pearl (or Nineteenth) street lots within six months from notice. By no stretch of the imagination could the silence of the court as to those lots be considered as a judgment annulling her title, when the validity of the tax title under the constitutional provision and Act No. 101 was not and could not be brought in judice in such a proceeding by her.

It is, however, absolutely true that the four alleged heirs of Kay, by reconvention, did assail the validity of any claim that Mrs. Fellman might have under her tax deed to the 10 lots fronting on Marks street, and did, as plaintiffs in reconvention, seek to have the ownership of said lots decreed to them, and to have themselves put in possession thereof, but the judgment on their de-

mand in reconvention was one rejecting it in unmistakable terms.

"It is further ordered adjudged and decreed that the demand in reconvention be dismissed, reserving the rights of the defendants, plaintiffs in reconvention, to file proceedings, on demands contained in said reconventional demand."

[3] It thus appearing that the validity of Mrs. Fellman's tax title, never having been passed upon on her petition, because no such issue was tendered by her petition, and consequently could not have been joined on her petition, and it further appearing that the issue of the validity of the tax title tendered by the reconventional demand of the alleged Kay heirs and tacitly joined by a presumed denial, under the practice of our courts, having been in effect dismissed as in case of nonsuit, the allegations of the rule of October 16, 1916, are not founded in fact, and the mover is not entitled to the relief prayed for thereunder. The judgment of the district court dismissing the rule was correct and accordingly it is

Affirmed.

MONROE, C. J., and SOMMERVILLE, J., take no part.