(112 So. 405)

No. 26289.

## FELLMAN'S HEIRS v. INTERSTATE LAND CO., Limited.

Feb. 28, 1927. Rehearing Denied March 28, 1927.

*(Syllabus by Editorial Staff.)*

**1. Taxation ⚖➔804—Defects in tax sale are cured by 3-year prescription, unless debtor remained in possession, taxes were paid, or description was insufficient (Const. art. 233).**

Under Const. art. 233, defects in tax sale are cured by prescription of 3 years, unless tax debtor remained in possession during 3 years, taxes had been paid, or description by which property was sold was insufficient to identify it.

**2. Taxation ⚖➔764(1)—Description in tax deed covering all lots owned by tax debtor in square held sufficient (Const. art. 233).**

Where tax debtor owned fourteen lots in square, and tax collector sold fourteen lots in same square, "assessed in the name of (debtor)," and where deed further described lots, *held* description in tax deed was sufficient to identify property under Const. art. 233.

**3. Adverse possession ⚖➔84—Prescription; title by 10-year prescription could not be acquired by person taking under deed disclosing tax sale of property to another.**

Defendant, acquiring possession under deed, disclosing judgment in favor of plaintiffs, confirming tax sale, did not take in legal-good faith, though lots in tax deed were described as facing on wrong street, and could not acquire title by prescription at end of 10 years, but only prescription available was prescription of 30 years.

**4. Lis pendens ⚖➔26(2)—Remote transferee of defendant claiming by prescription acquired no better title than defendant had at first transfer subsequent to filing of petitory action.**

Where defendant, not acquiring possession of property in legal good faith, transferred to another after filing of petitory action by plaintiff, claiming under tax deed, and transferee transferred to third party, latter acquired no better title than defendant had at time of first transfer, Act No. 22 of 1904, relative to record-

ing of notice of suit concerning immovables having no application.

**5. Lis Pendens ⚖➔26(2)—Ten-year prescription could not be relied on by remote transferee of defendant not acquiring possession in legal good faith though petitory action were brought directly against transferee.**

Where defendant not acquiring possession of property in legal good faith transferred same to another who transferred to third party, latter could not rely on prescription begun by defendant's possession as basis for prescription of 10 years, though petitory action by plaintiff claiming under tax deed were brought directly against third party.

**6. Taxation ⚖➔529—Presumption that taxes were paid does not arise, though taxes were prescribed when property was sold for taxes (Act No. 77 of 1880, § 26).**

Though taxes were prescribed when property was sold for taxes under Act No. 77 of 1880, § 26, no presumption that said taxes were paid would arise, since payment and prescription are entirely distinct methods of discharging obligations.

**7. Payment ⚖➔66(1)—Natural as well as civil obligation is discharged by payment, but not by prescription (Rev. Civ. Code, art. 1758, subd. 3).**

Payment completely discharges natural as well as civil obligation, but prescription under Rev. Civ. Code, art. 1758, subd. 3, does not, and hence prescription raises no presumption that debt which was prescribed has actually been paid.

**8. Taxation ⚖➔804—After 3-year prescription period for attacking tax sale, it is immaterial that sale could have been attacked on ground that taxes were prescribed (Const. art. 233).**

Where prescription of 3 years for attacking tax sale under Const. art. 233, has run, it is immaterial whether or not tax sale might at one time have been attacked on ground that taxes were prescribed.

**9. Libel and slander ⚖➔139—Defendants denying plaintiff's possession in suit for slander of title need not elect to disclaim or assert title until such issue is decided.**

Denial of possession of property by plaintiff bringing suit for slander of title is in effect denial of plaintiff's right to bring suit, and until such issue is decided defendants need not elect to disclaim or assert title.

**10. Estoppel ⬡⟳70(1)—Party sued in slander of title, not required to disclaim or assert title, and defending motion to strike title, held not estopped from bringing petitory action.**

Where defendants, in suit for slander of title, were not required to elect to disclaim or assert title, and defended rule to have their title stricken from records, which was an unequivocal assertion of title on first occasion on which they were called on to assert it, defendants were not estopped from subsequently bringing petitory action to try title to land.

**11. Real actions ⬡⟳8(4)—Petitory action; plaintiff prevailing in petitory action must pay taxes, if at all, to person paying same while in possession, and not to his remote transferee.**

Taxes paid on land by party in possession, if due by plaintiff prevailing in petitory action, are payable to party paying taxes, where land produced no·revenues, and are not due to remote transferee of party paying taxes having no connection with land when taxes were paid.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Petitory' action by the heirs of Mrs. B. Fellman against the Interstate Land Company, Limited, in which a reconvention was filed. From the judgment, defendant Samuel V. Edmiston appeals. Affirmed.

Donelson Caffery and William H. Talbot, both of New Orleans, for appellant Edmiston.

Monroe & Lemann, of New Orleans, for appellees.

ST. PAUL,· J. This is a petitory action. The property involved has twice already been in litigation before this court, once in Interstate Land Co. v. Fellman, 134 La. 538, 64 So. 404, and again in Fellman v. Kay, 147 La. 953, 86 So. 406. In the first of these all that was decided was that·the present plaintiff was then in possession of the property; in the second case all that was decided was (in effect) that the validity of plaintiff's title (by tax sale) had never been passed upon.

A sketch of the property involved is to be found in 134 La. 539, 64 So. 404, and the history thereof is to be found in 147 La. 954 to 956, 86 So. 406.

But for the purposes of this case it suffices to say that from the year 1836 to the year 1884 one A. H.· Clayton owned ten·lots of ground, Nos. 1 to 10, fronting on Pear street (late Nineteenth) from Joliet street (late Jefferson) to Leonidas street, the rear boundary of the square being Marks street; and Robert Kay owned the rest of the square, to wit, ten lots Nos. 13 to 22, fronting on Marks street from Leonidas street to Joliet street, and four other lots (forming the whole square) to wit, lots Nos. 11 and 12, fronting on Leonidas street, and lots Nos. 23 and 24, fronting on Joliet street. See the sketch in 134 La. 539, 64 So. 404.

### I.

[1] Plaintiffs claim, under mesne conveyances, through a tax deed executed by James D. Houston, state tax collector, before Joseph H. Spearing, notary public, on April 10, 1884 (to be found in transcript No. 19523, at page 130), whereunder said property was sold by virtue of Act 77 of 1880, p. 88, for the unpaid taxes of 1880. And, whatever be the defects in that tax sale, they are cured by the prescription of 3 years, beginning in this case from the adoption of the Constitution of 1898 (May 12, 1898), unless (1) the tax debtor remained in possession during said 3 years; or (2) the taxes had been paid; or (3) the description by which the property was sold was insufficient to identify it. Const. 1898, art. 233.

### II.

There is no pretense that the taxes had been paid. The evidence in transcript No. 19523 (134 La. 538, 64 So. 404) shows·conclusively that the tax debtor was ·never in possession of the property at any time; but, on the contrary, the property was either vacant or else in the possession of the tax pur-

chaser until physically ousted by the present defendant in September, 1910.

[2] The remaining question as to this tax deed is whether the description therein was sufficient to identify the property.

We have already said that the fourteen lots above described (Nos. 11 to 24) were the only lots which the tax debtor owned in said square; and, as the tax collector sold *fourteen lots* in said square, "assessed in the name of R. Kay," it follows that said description covered the only fourteen lots which "R. Kay" owned in said square. Weber's Heirs v. Martinez, 125 La. 663, 51 So. 679; Newman v. Gleason, 132 La. 561, 61 So. 620.

But the description went further than this; the lots were correctly described as lots 11 to 24, and it correctly stated that lots 11 and 12 and lots 23 and 24 were *Key lots*, the two former fronting 60 feet on Leonidas street and the two latter fronting 60 feet on Jefferson street, now Joliet; Leonidas and Joliet being parallel streets, and hence lots 11 and 12 and lots 23 and 24 being rear to rear.

It is true that the description erroneously described lots 13 to 22 as fronting on Leonidas street, and lot 22 as forming the corner of Leonidas and Jefferson, now Joliet. But such a description was not misleading in the least because it was glaringly erroneous on its face; (1) because lots 11 and 12 already took up 60 feet of the front on Leonidas street, and, being (with lots 23 and 24 on Joliet street) the *Key lots* of the square, it followed that ten contiguous lots could not possibly be located on either Leonidas or Joliet streets, but must be located either on Pear street (formerly Nineteenth), or on Marks street; and again it was patent on the face of the description that lot 22 *could not* be at the corner of Leonidas and Jefferson street (Joliet), since those two streets were parallel. The only possible room for doubt would have been whether said ten lots (Nos. 13 to 22) faced on Pear street (formerly Nineteenth)

or on Marks street; and a reference to Kay's title (if one were willing to take the trouble) would have shown that the ten lots faced on Marks street. We think the description in the tax deed was not misleading, and sufficed to identify the property fully.

### III.

In reconvention defendant set up in itself title by a title translative of the property and the prescription of ten years.

[3] The evidence shows that the defendant went into possession on September 3, 1910, under a deed from the heirs of Kay. But that deed shows on its face that the purchaser was not in legal good faith when it took title from these heirs, for the deed discloses that plaintiffs had obtained a judgment confirming the very tax sale herein relied upon in the proceedings No. 84204 of the civil district court; but this it chose to disregard, because, although the lot numbers were the same in the tax deed, yet the lots were therein described as facing on a different street. And, as we have pointed out above, that circumstance could not mislead.

### IV.

[4, 5] As there was no legal good faith when possession was first taken, it follows that the only prescription available to defendant was the prescription of 30 years; so that, when defendant transferred the property, after the filing of this suit, to one Young I. Dowden, who afterwards transferred it to one Samuel V. Edmiston, the present appellant, the latter acquired no better title than the defendant had at the time it made the transfer to Dowden. The act relative to the recording of notice of filing of suits concerning immovable property (Act 22 of 1904) has no possible application here. Had plaintiffs never filed suit at all against this defendant, and waited until now to bring suit directly against Edmiston, the latter even then

could not rely on the prescription begun by the possession of the Interstate Land Company as a basis for the prescription of 10 years.

## V.

After this case was submitted the appellant, Edmiston filed a plea, the purpose of which was to avoid the constitutional prescription of 3 years in favor of plaintiff's tax title; said plea being that the taxes for which the property was sold were prescribed at the time of said sale, "and hence presumptively paid."

[6-8] Granted that the taxes of 1880 were prescribed when the property was sold for those taxes in 1884 (see Act 77 of 1880, § 26), nevertheless that would not result in any presumption that said taxes were *paid*, for payment and prescription are entirely distinct methods of discharging obligations. Payment completely discharges the natural, as well as the civil, obligation; but prescription does not (R. C. C. art. 1758, subd. 3); and hence prescription raises no · presumption that the debt which has been prescribed has actually been paid. And, as we said at the start, it is now quite immaterial whether or not the tax sale might at one time have been attacked on the ground the taxes were prescribed, for that is not one of the reasons for which a tax sale may be attacked after the constitutional prescription of 3 years has run.

## VI.

[9-10] We find in the record a plea of estoppel, not mentioned in brief or in argument, to the effect .that, in the proceedings No. 98953, civil district court, being Interstate Land Co. v. Fellman, 134 La. 538, 64 So. 404, the Fellmans filed *only* a general denial to a suit for slander of title, and did not set up title in themselves, which would be in effect an acknowledgment of the Interstate Company's title. But the fact is that the Fellmans denied the Interstate Company's possession of the property, which plea was in effect a denial of the Interstate Company's right to bring the action of slander of title; and, until that issue was decided, the Fellmans were not called upon to make their election whether they would disclaim title or assert title. And, when that issue of possession was finally determined by this court, *without fixing any time within which the Fellmans should make their election*, the whole case seems to have remained with everything left in statu quo until the Interstate Company attempted to have the Fellmans' title stricken from the conveyance records by rule taken in the matter No. 84204, civil district court, being Fellman v. Kay, 147 La. 953, 86 So. 406; wherein, as may be seen, that relief was denied. But the very fact that the Fellmans defended that rule was an unequivocal assertion of title on the very first occasion on which they were called upon to do so. Hence the plea of estoppel based on alleged disclaimer of title is without merit.

## VII.

[11] Appellant (Edmiston) claims that in any event he is entitled to the taxes paid by the Interstate Company whilst it was in possession of the land. But those taxes, if due by plaintiff to any one, were due to the Interstate Company, by whom they were paid; say, as negotiorum gestor for plaintiffs (the lands having produced no revenues out of which said taxes could be paid). Weber v. Coussy, 12 La. Ann. 534. But they were certainly not due to this appellant, who paid none of them, and had no connection whatever with the land when said taxes were paid. And in point of fact said Interstate Company did have judgment against plaintiff for the amount of said taxes.

As to this appellant he had judgment against his warrantor, Young I. Dowden, for the purchase price paid to said Dowden, say, $7,500; and Dowden in turn had judgment against the Interstate Company for the pur-

chase price paid by him, say, $5,000 (all with interest); and both judgments are doubtless perfectly good. But, in any event, appellant has been given all that he was entitled to at the hands of the court.

We see no error in the judgment appealed from, which awarded the property to plaintiff, and gave defendant a judgment in warranty as above said.

### Decree.

The judgment appealed from is therefore affirmed.