KUHN, J.
 

 |2PIaintiff, Ervin Martin Davis, Jr., filed this suit against Peoples Benefit Life Insurance Company (“Peoples Benefit”), seeking to recover benefits under a policy that insured the life of his brother, Roger Davis, whose death was caused by an overdose of prescription medication.
 
 [2]
 
 Peoples Benefit paid a $5,000 whole life benefit under the terms of the policy, but it denied plaintiffs claim for recovery under the terms of two $30,000 accidental death benefit policy riders. In the trial court proceedings, Peoples Benefit filed a motion for summary judgment based on the terms of the riders, which excluded coverage for the accidental death benefit where such death was “caused by or contributed to by ... being under the influence of ... any drug which was not administered in a therapeutic dosage or prescribed by a physician.” The trial court granted Peoples Benefit’s motion for summary judgment. On appeal, we find the policy language at issue is less favorable to the policyholder than the provision of La. R.S. 22:975(B)(10), and we conform the policy to provide the statutorily-required coverage.
 
 See
 
 La. R.S. 22:975(B)(8). As conformed, we find the policy does not exclude coverage for a death that results from an accidental overdose of prescription medication. Thus, we reverse and remand for further proceedings.
 

 |SI. PROCEDURAL AND FACTUAL BACKGROUND
 

 Plaintiffs deposition testimony established that he and Roger lived together in Talisheek, Louisiana, at the time of his death. During the last five years of Roger’s life, he had been involved in multiple accidents in which he had sustained serious injuries to one of his hands and one of his arms. He also suffered from back pain, he had lost a thumb while splitting wood, and he had also suffered severe burns. Due to these injuries and the resulting pain, he sought medical treatment and had been prescribed Lortab (hydroco-done), Soma (carisoprodol), and Xanax (al-prazolam). During this span of time, there were a few occasions when plaintiff was aware that his brother had taken dosages of his prescribed medications closer together than they had been prescribed. Plaintiff described that the medications confused Roger’s thinking processes and made him sleepy. Plaintiff also described Roger as having a high tolerance to pain medications and stated that it “took a lot ... to ease [his] pain.”
 

 Before leaving for work on the morning of October 14, 2005, plaintiff spoke to Roger, who told him that he was taking pain medication, he was not planning to go anywhere, and that his plans were to “try to get [his] back to quit hurting.” During that conversation, plaintiff learned that Roger had gone to a pain clinic the day
 
 *1035
 
 before. When plaintiff returned home after work, he found his brother dead on the kitchen floor with “one pill laying beside him” and a “pill bottle in his hand.” Plaintiff called “9-1-1.” The coroner, Dr. Peter Galvan, ruled Roger’s death as an “accident” caused by “[p]olysubstance drug toxicity of Soma, Xanax, and Hydrocodone.” Plaintiff testified that he had no reason to believe that Roger |4was suffering from depression, and he opined that Roger “just accidentally took too much” of the prescribed medications in an attempt to relieve his pain.
 

 According to the deposition of Dr. Gal-van, an internal medicine physician, the toxicity reports pertaining to Roger’s autopsy established that the amounts of both the hydrocodone and alprazolam in his-body at the time of his death were above therapeutic levels, and the hydrocodone was at a lethal level. The combined effect of the medicines caused respiratory depression, ultimately causing him to stop breathing and his heart to stop pumping.
 

 According to the affidavit and attached opinion letter of Gary H. Wimbish, Ph.D., a board-certified, forensic toxicologist, Roger’s prescribed dose of 10 milligrams was to be taken four times per day for a total of 40 milligrams per day. Since “a lethal dose of hydrocodone is at least 100 milligrams,” Wimbish concluded. Roger had “consumed at least two and a half times the prescribed amount” of hydroco-done. He further concluded that the al-prazolam, taken at “three times the therapeutic concentrations,” contributed to the toxic effect of the hydrocodone, “reduc[ing] the amount of hydrocodone necessary to produce respiratory depression and death.”
 

 After plaintiff submitted a proof of loss regarding Roger’s death, Peoples Benefit denied plaintiffs claim for recovery under the accidental death benefit riders, and this suit followed. The trial court granted summary judgment in favor of Peoples Benefit and dismissed plaintiffs suit with prejudice. Plaintiff has appealed, urging the trial court erred in failing to find that Louisiana statutory law prohibits the exclusionary language contained in the riders, upon which Peoples Benefit relied in denying coverage.
 

 141- ANALYSIS
 

 A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
 

 The initial burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party’s claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(C)(2). Once the movant has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial.
 
 See Id.; Samaha v. Rau,
 
 07-1726, p. 5 (La.2/26/08), 977 So.2d 880, 883. The non-moving party may not rest on mere allegations or denials but must set forth specific facts that show that a genuine issue of material fact remains. If the nonmoving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law.
 
 Berry v. Paul Revere
 
 
 *1036
 

 Life Ins. Co.,
 
 08-0945, p. 6 (La.App. 1st Cir.7/9/09), 21 So.3d 385, 388,
 
 writs denied,
 
 09-2220 & 09-2241 (La.12/18/09), 23 So.3d 942 & 945;
 
 see
 
 La. C.C.P. art. 966(C)(2). A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute.
 
 Samaha,
 
 07-1726 at p. 6, 977 So.2d at 884 (quoting
 
 Hines v. Garrett,
 
 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765). An appellate court reviews a district court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Lafayette Ele. & Marine Supply, Inc. v. Abdon Callais Offshore, L.L.C.,
 
 09-2277, p. 1 (La.App. 1st Cir.7/29/2010), 44 So.2d 890.
 

 The motion for summary judgment at issue here arose in the context of a suit for accidental death benefits. The insurance code gives health and accident insurance policyholders very substantial protection regarding matters of required and optional coverage as addressed in La. R.S. 22:975.
 
 [3]
 

 See Cataldie v. Louisiana Health Service and Indent. Co.,
 
 456 So.2d 1373, 1375 (citing former La. R.S. 22:213). With respect to this litigation, La. R.S. 22:975 provides as follows, in pertinent part:
 

 B. Other provisions (optional). No such policy shall be delivered or issued for delivery containing provisions respecting the matters set forth below unless such provisions are, in substance, in the following forms, or, at the option of the insurer, in forms which in the written opinion of the commissioner of insurance are
 
 not less favorable to the policyholder:
 

 [[Image here]]
 

 (8) Conformity with state statutes: Any provision of this policy which, on the date of issue, is in conflict with the statutes of the state in which the insured resides at the date of issue is understood to be amended to conform to such statutes.
 

 [[Image here]]
 

 (10) Intoxicants and narcotics: The insurer shall not be liable for any loss sustained or contracted in consequence of the insured’s being |7intoxicated or under the influence of narcotics unless administered on the advice of a physician. (Emphasis added.)
 

 The accidental death benefit policy riders
 
 [4]
 
 at issue provide as follows, in pertinent part:
 

 DEFINITIONS
 

 B. “INJURY” means injury to your body caused by an accident, directly and independently of all other causes....
 

 ACCIDENTAL DEATH BENEFIT
 

 We pay a benefit if you die as a result of an injury....
 

 
 *1037
 
 EXCLUSIONS
 

 We do not pay benefits for accidental death caused by or contributed to by: (1) intentionally self-inflicted injury, suicide or any attempt thereat while sane;
 

 [[Image here]]
 

 (5) being under the influence of alcohol or any drug which was not administered in a therapeutic dosage or prescribed by a physician.
 

 During the trial court proceedings, Peoples Benefit did not urge that Roger’s death was a suicide or anything other than an “accidental death.” Rather, it claimed that the accidental death was subject to the policy exclusion set forth in Paragraph 5, because Roger was under the influence of drugs that were not administered in a therapeutic dosage.
 

 IsOn appeal, plaintiff asserts that the exclusionary language of the policy is less favorable to him, as the policyholder, than the statutory language of La. R.S. 22:975(B)(10) and, further, that the policy language was not approved by the commissioner of insurance.
 
 [5]
 
 As such, plaintiff contends Peoples Benefit should not be able to rely on this exclusion to deny his claim.
 

 Comparing the Peoples Benefit policy language to the statutory language, we find the policy language is in fact less favorable to plaintiff on more than one basis. First, the Peoples Benefit policy language excludes coverage for an accidental death caused by or contributed to by “any drug” which was not administered in a therapeutic dosage or prescribed by a physician. Thus, the policy exclusion would apply in circumstances where the insured is not under the influence of “narcotics,” as specifically referenced in La. R.S. 22:975(B)(10). Secondly, and most significantly based on the facts presented herein, the policy language would exclude coverage for an accidental death caused by or contributed by a drug that is not administered in a therapeutic dosage, even though it had been prescribed by a physician. The statutory language of “under the influence of narcotics unless administered on the advice of a physician” is reasonably interpreted as merely requiring that the narcotic substance at issue has been prescribed by a physician rather than requiring that the dosage not exceed a therapeutic or prescribed dosage of that substance.
 
 See Smith v. Stonebridge Life Ins. Co.,
 
 582 F.Supp.2d 1209, 1219-23 (N.D.Cal.2008);
 
 Hummel v. Continental Cas. Ins. Co.,
 
 254 F.Supp.2d 1183, 1189-90 (Nev.2003). When the language of a | gstatute is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. We view the focus of the statutory limitation as excluding losses resulting from the illegal use of drugs as opposed to the legitimate use of a controlled substance pursuant to a physician’s advice.
 
 See Smith,
 
 582 F.Supp.2d at 1223. Peoples Benefit put forth no evidence, and we have found no legislative history, establishing that our legislature intended the statutory exclusion to limit or regulate losses resulting from accidental overdoses of prescription drugs. Because beneficiaries still have the burden of proving that the insured’s death was “accidental,” an insurer is not required to insure the risk of an intentional overdose by an insured.
 
 Id.
 

 Based on the facts of this case, the Peoples Benefit policy language would op
 
 *1038
 
 erate to exclude coverage for Roger’s death because it was caused by or contributed to by the hydrocodone and alprazo-lam that was ingested by Roger in non-therapeutic dosages, although these drugs were administered on the advice of a physician. However, because the policy language is less favorable to plaintiff than the statutory language, it must be conformed to comply with the language of La. R.S. 22:975(B)(10). As such, we recognize there is no dispute that Roger legally possessed the drugs that caused his death, i.e., he had been prescribed the drugs that caused his death by a physician. We construe “administered on the advice of a physician” to include Roger’s situation, where he had sought medical attention for pain relief and had been prescribed these drugs. Thus, we conclude that the statutory exclusion, which excludes liability for any loss sustained as a result of the insured’s being “under the influence of narcotics unless administered on the advice of a physician” does not preclude coverage based on the facts of this | incase. Peoples Benefit has failed to establish that plaintiff is not entitled to recover benefits pursuant to the riders based on Roger’s death being caused by drugs prescribed to him but administered in non-therapeutic dosages. Accordingly, Peoples Benefits has failed to establish it was entitled to summary judgment as a matter of law, and the trial court erred in granting its motion. La. C.C.P. art. 966(B).
 

 III. CONCLUSION
 

 For these reasons, the trial court’s judgment is reversed, and we remand this matter for further proceedings in accordance with this opinion. The costs of this appeal are assessed to Peoples Benefit.
 

 REVERSED AND REMANDED.
 

 [2]
 

 . The record establishes that National Home Life Assurance Company, predecessor in interest to Peoples Benefit, issued the policy that insured the life of Roger in 1976. The owner of the policy was Roger’s mother, Mrs. Ervin Davis, who predeceased Roger. According to plaintiff his mother gave him a copy of the policy before she died, and he continued to pay the premium. The riders at issue provided that benefits would be paid to the beneficiary shown on the policy schedule and, in the event there was no such beneficiary, benefits would be paid to the decedent’s estate. Peoples Benefit does not dispute that the schedules in the riders named no beneficiary, that plaintiff is Roger’s only living heir, and that he is the proper beneficiary under these riders.
 

 [3]
 

 . Acts 2008, No. 415, § 1, eff. January 1, 2009. renumbered former La. R.S. 22:213 to La. R.S. 22:975 without changing the substance of its provisions. Louisiana Revised Statutes 22:47(2)(a) classifies "health and accident” insurance as "[(Insurance of human beings against bodily injury, disablement, or death by accident or accidental means....”
 

 [4]
 

 . One rider was effective as of July 22, 1996; the other rider was effective October 22, 1998. Plaintiff’s deposition testimony established that he and his brother had attended high school in Louisiana, had resided on the same property near their parents in Louisiana. and had worked in Louisiana for many years prior to Roger’s death. Peoples Benefit did not contest that Roger was a resident of Louisiana as of the dates these riders were issued.
 

 [5]
 

 . Peoples Benefit did not make any showing that the policy language at issue was approved by the insurance commissioner.