77 So.3d 1012 (2011)
Jerri G. SMITKO
v.
GULF SOUTH SHRIMP, INC.
No. 2010 CA 0531.
Court of Appeal of Louisiana, First Circuit.
October 19, 2011.
*1014 Kevin R. Tully, W. Nicholas Dietzen, IV, New Orleans, LA, for Plaintiff-Appellee, Dulac Dat, L.L.C., Successor-in-Interest to Jerri G. Smitko.
Robert V. McAnelly, Edna Ayliffe Latchem, Baton Rouge, LA, for Defendants-Appellants, Gulf South Shrimp, Inc. and Source Business and Industrial Development Company, L.L.C.
Before KUHN, GUIDRY, McCLENDON, WELCH, and HIGGINBOTHAM, JJ.
KUHN, J.
This appeal considers whether a trial court erred in granting a summary judgment that confirmed and quieted the title of a tax purchaser where a former property owner was served with a petition to quiet tax title and citation but failed to either timely file a petition to annul the tax sale or file a reconventional demand that prayed to annul the tax sale. We affirm because the former property owner did not institute a timely "proceeding to annul" as required by former La. R.S. 47:2228, and because appellants have not established that the manner in which the sale of the property was conducted deprived them of due process of law.[1]

*1015 I. PROCEDURAL AND FACTUAL BACKGROUND
On June 25, 2003, Jerri G. Smitko acquired full ownership on three tracts of land by purchasing the subject properties at a sheriffs tax sale in Terrebonne Parish.[2] The tax deeds at issue were recorded in the mortgage and conveyance records of Terrebonne Parish on July 7, 2003. The tax sale listed the previous recorded owner of the land as Gulf South Shrimp, Inc. ("GSS"). During the three-year redemption period following recordation of the tax sale, GSS did not redeem the subject properties.[3]
More than three years after the tax deed was recorded, Smitko filed a petition to quiet tax title on November 16, 2006, pursuant to former La. R.S. 47:2228. Smitko's petition named GSS as defendant and requested that a curator ad hoc be appointed to represent GSS or its assigns because the last known registered agent of GSS, Vincenzo Marsala, could not be located. Smitko prayed that if no proceeding to annul the tax sale was instituted within six months from the date of service of the petition that judgment be rendered in favor of Smitko, quieting and confirming her title in the property.
On December 11, 2006, the attorney ad hoc appointed to represent GSS's interests accepted service of Smitko's petition. On December 18, 2006, GSS, through its own retained counsel, filed an answer to the petition that generally denied the allegations *1016 of Smitko's petition. GSS further alleged that no notice "was ever sent nor received of tax delinquency." GSS's answer prayed for the dismissal of Smitko's petition.
On July 10, 2007, Source Business and Industrial Development Company, L.L.C. ("Source Bidco"), who claimed to be the holder of a recorded mortgage and security interest in the subject properties, filed a petition of intervention. Therein, Source Bidco united with GSS to resist Smitko's demand to quiet title to the subject properties, claiming that the "sheriff failed to properly notify [GSS]" of the tax sale. Source Bidco also identified other lienholders and alleged that these lienholders also had not been notified of the tax sale. Other than admitting that the described tax sale had occurred, Source Bidco generally denied the allegations of the petition. Source Bidco claimed, however, that due to the lack of the proper notice having been sent to "all parties with an interest in the property," the sale violated federal due process and is null and void. Source Bidco prayed for a judgment annulling the sale upon "the payment of the price and all taxes and costs . . . and ten percent per annum interest . . . to the . . . tax sale purchaser."
On August 10, 2007, Smitko sold, conveyed, and transferred all of her rights, title, and interest in the subject properties to Dulac Dat, L.L.C. ("Dulac Dat"). Soon after on August 15, 2007, Dulac Dat was formally substituted as the proper party plaintiff. By order dated August 17, 2007, Dulac Dat was awarded possession of the subject properties.[4] Thereafter, Dulac Dat filed an opposition to Source Bidco's intervention in the form of a pleading captioned "Exceptions," wherein it asserted that Source Bidco lacked procedural capacity, had no cause or right of action, and had no interest to institute the suit.
On April 24, 2008, almost a year-and-a half after GSS's attorney ad hoc accepted service of Smitko's petition, GSS filed a supplemental and amending answer, a reconventional demand against Dulac Dat, and a third party demand against Jerry J. Larpenter, in his capacity as sheriff/ex officio tax collector for Terrebonne Parish ("the Sheriff or "Sheriff Larpenter"). In a supplemental and amending answer and reconventional demand, GSS alleged for the first time that the tax sale was an "absolute nullity" on the alleged basis that it neither received any notices of the tax delinquencies from the sheriff nor did it receive any notices of the tax sales of its property. GSS further alleged that the tax sales were conducted by Sheriff Larpenter on June 25, 2003, for the non-payment of the 2002 ad valorem property taxes, and the only notices sent by the Sheriffs office regarding non-payment of the 2002 taxes were notices purportedly sent to "[GSS], care of Source Bidco, 456 East Airport Avenue, Baton Rouge, Louisiana, which address was never the mailing address of [GSS]."[5]
*1017 GSS also asserted that on April 15, 2003, a monetary judgment was rendered in favor of Coastal Commerce Bank and recorded in the mortgage records of Terrebonne Parish and that the Internal Revenue Service filed a notice of federal tax lien in the mortgage records of Terrebonne Parish. GSS claimed that the June 25, 2003 tax sales are null and void due to the Sheriffs failure to send notices to GSS as the record owner of the property, Coastal Commerce Bank as a known judicial mortgage holder,[6] and the IRS as a lien holder. GSS asserted such lack of notice violates procedural due process rights. GSS further claimed that its action to nullify the tax sales was timely filed "on or about December 18, 2005 when the original answer was filed." GSS prayed for a judgment annulling the tax sale as to each tract of the subject property and the return of GSS's ownership with recognition of the judicial mortgage and federal tax lien.
Sheriff Larpenter answered GSS's third-party demand, generally denying GSS's claims. Dulac Dat responded to GSS's reconventional demand by filing another pleading captioned, "Exceptions," wherein it argued that GSS's "citation was insufficient[,] the action [was] barred by prescription and p[er]emption[,] . . . [GSS had] no cause or right of action to proceed[, and] . . . [GSS had used] improper cumulation of actions."
On July 25, 2008, GSS filed a motion for summary judgment, maintaining there were no genuine issues of material fact that the tax sales of GSS's property were "nullities" based on "various due process violations." In support of the motion, GSS filed Sheriff Larpenter's responses to its request for admission of facts, wherein Sheriff Larpenter admitted that the only notices relating to the subject properties that he sent regarding either tax delinquencies or scheduled tax sales were sent to the East Airport Avenue address in Baton Rouge, Louisiana. Further, Sheriff Larpenter admitted that he did not send any notice regarding property taxes owed, the delinquency, or scheduled tax sales to any mortgage or judicial lien holder, including First Louisiana Business & Industrial Development Corporation ("First Louisiana Bidco") and Coastal Commerce Bank.[7]
Additionally, GSS submitted an affidavit of one of its stockholders, J. Peyton Parker, Jr., who asserted he was familiar with GSS's business affairs. Parker declared that GSS never maintained an office at the East Airport address nor did GSS ever list the East Airport address as its mailing or business address. Parker further stated that GSS was initially incorporated in Baton Rouge, but it had changed its address to Dulac, Louisiana in April 2000. Although GSS had obtained a loan from First Louisiana Bidco, Parker attested GSS had never done business at the office or address of Source Bidco nor had it ever appointed Source Bidco or its agent as an agent for service of process. Parker attested that GSS's agent for service of process at the time of the tax sales affecting the subject properties was Vincenzo L. Marsala, with 7332 Grand Caillou Road, Dulac, Louisiana, 70353, as the address registered with the Louisiana Secretary of State. Parker's affidavit further stated that GSS neither received any notices from *1018 the Sheriff of its 2002 property tax delinquencies nor did it ever receive notices of the scheduled sheriffs tax sales in June 2003.
On November 24, 2008, the trial court signed a judgment that denied as moot the peremptory exception raising the objections of no right of action and lack of procedural capacity to institute the suit filed by Dulac Dat. The trial court also denied GSS's motion for summary judgment on the grounds that GSS did not timely institute a proceeding to annul the tax sales within six months from the date it was served with the petition as required by former La. R.S. 47:2228 and La. Const, art. 7, § 25(C).
In March 2009, Dulac Dat filed a motion for summary judgment, seeking an order quieting the titles to the property, urging primarily that GSS had failed to timely institute the appropriate proceeding to annul the tax sales. Dulac Dat maintained that GSS's original answer did not constitute a reconventional demand that attacked the validity of the tax sale and that GSS's amended answer with its reconventional demand was filed well after the statutory six-month limitation for attacking the sale due to nullity. Both GSS and Source Bidco opposed Dulac Dat's motion on the basis that the Sheriff had not provided proper notice of the tax sales to either GSS or its creditors.[8] By judgment dated May 13, 2009, the trial court granted Dulac Dat's motion for summary judgment and granted judgment in its favor and against GSS and Source Bidco, thereby quieting the tax titles and declaring Dulac Dat as the sole and only owner of the subject properties, free from any encumbrances.
GSS and Source Bidco have appealed this judgment, arguing that the trial court erred in granting Dulac Dat's motion for summary judgment and in ordering the quieting of the tax titles in favor of Dulac Dat because the subject properties were sold at the tax sale without written notice to the recorded property owner and lienholders. GSS and Source Bidco urged that: 1) the tax sale was an absolute nullity because no notice was mailed to "all parties with an interest of public record" although the names and addresses were reasonably ascertainable; 2) an absolute nullity can be attacked at anytime; 3) GSS's answer that was filed within six months of the filing of the petition to quiet tax title was sufficient to inform the tax purchaser of the constitutional defect of lack of notice; and 4) the allegations of the supplemental and amending answer, reconventional demand and third party demand related back to the filing of the original answer.

II. ANALYSIS
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
*1019 The initial burden of proof remains with the movant, but once the movant has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. See La. C.C.P. art. 966(C)(2). The nonmoving party may not rest on mere allegations or denials but must set forth specific facts that show that a genuine issue of material fact remains. If the nonmoving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Davis v. People's Benefit Life Ins. Co., 10-0194, p. 5 (La.App. 1st Cir.9/10/10), 47 So.3d 1033, 1035, writ denied, 10-2440 (La.12/17/10), 51 So.3d 11; see La. C.C.P. art. 966(C)(2).
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Davis, 10-0194 at p. 6, 47 So.3d at 1036. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Anderson v. State Farm Fire & Cas. Ins. Co., 10-0036, p. 4 (La.App. 1st Cir.7/16/10), 42 So.3d 1140, 1143.
Louisiana Constitution article 7, Section 25 provides, as follows, in pertinent part:
(A) Tax Sales. (1) There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs' sales, in the manner provided for judicial sales. . . . A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
. . .
(B) Redemption. (1) The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.
. . .
(C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. . . . (Emphasis added).
Consistent with La. Const, art. 7, § 25, former La. R.S. 47:2228 also prescribed that GSS had six months from the date it was served with Smitko's petition to quiet title within which to file its proceeding to annul. Alternatively, the jurisprudence has recognized that GSS could have filed and served a reconventional demand within the six-month period to attack the validity of the tax sale. See Regina Lumber Co. v. Perkins, 175 La. 15, 17, 142 So. 785, 786 (1932); Fellman v. Kay, 147 La. 953, 963, 86 So. 406, 409-10 (1920). A separate proceeding is similarly required when attacking the nullity of a judgment. See La. *1020 C.C.P. art. 2004, Official Revision Comments-(d).
The Fellman court addressed the second clause of article 233 of the Constitution of 1898 (a predecessor provision of La. Const, art. 7, § 25(C)), wherein the framers of that Constitution set out to create "public confidence in the validity of [tax titles]." Fellman, 147 La. at 965, 86 So. at 410. The framers adopted article 233 to put an end to the doubt and uncertainty surrounding and attaching to tax titles. Id. In Fellman, 147 La. at 963, 86 So. at 409-10, the court recognized:
It is plain that, when the tax purchaser avails himself of this proceeding [to quiet a tax title], he does not place at issue the validity vel non of his tax title; he simply invites assault thereon; and it is equally clear that if no action to annul be brought within six months, the only judgment that the court is authorized to render is one quieting and confirming the title by rendering a judgment against the former owner, forever barring and prohibiting him from assailing the tax deed, for the sole reason that he has not brought his action to annul within the six months allowed therefor. (Emphasis added).
And quoting Ashley Co. v. Bradford, 109 La. 641, 653, 33 So. 634, 639 (1902), the Fellman court further explained:
The [six month] constitutional provision takes nothing awayneither the right nor the remedy. It merely limits the time within which the original owner must present his claim. It really affirms the existence of a remedy, but limits its operation. The negligent owner is cut off by limitation because he failed to prosecute the remedy limited.
Appellants argue that the six-month limitation should not be given effect here and that the sale is an absolute nullity. To declare a tax sale void without giving effect to the constitutional requirement that a proceeding be instituted within six months of service of the suit to quiet title would create a precarious title, effectively taking the property out of commerce. Without strict application of the constitutional time limits, no tax sale would ever be certain, and would create a chaotic result. Former La. R.S. 47:2228 is not ambiguous and must be enforced as written. The six-month constitutional limitation is a reasonable limitation imposed by this state under its sovereign powers. A state, within reasonable bounds, may limit the time for which its courts shall remain open for the adjustment of controversies. Fellman, 147 La. at 964, 86 So. at 410 (quoting Ashley Co., 109 La. at 653, 33 So. at 639.) Because GSS did not timely file a suit to annul or a reconventional demand placing the validity of the tax sale at issue, GSS's claim of nullity was not properly preserved for consideration by the trial court or this court.
Raising a claim of nullity in an answer as a defense is not sufficient to comply with the constitutional and statutory requirement that "a proceeding to annul" the sale must be "instituted" within six months from the date of service of petition and citation of the petition to quiet and confirm the title.[9] Under La. Const, art. 7, *1021 § 25(C), both an original petition and a reconventional demand require an answer and must be served on the adverse party. La. C.C.P. arts. 891, 1031, 1032, 1201 and 1312. If a pleading requires an appearance or answer, service by mail is not authorized, and sheriffs service is required. La. C.C.P. arts. 1312-14; see Avants v. Kennedy, 02-0830, p. 10 (La. App. 1st Cir.12/12/02), 837 So.2d 647, 654, writ denied, 03-0203 (La.4/4/03), 840 So.2d 1215. The constitutional and statutory use of the word "proceeding" is logically interpreted as requiring that GSS timely institute either a separate suit or assert its claim by reconventional demand, whereby Smitko, Dulac Dat's predecessor in interest, would have received proper and timely service of the proceeding.
GSS argues that the filing of its supplemental and amending answer and reconventional demand after the six-month period relates back to the date that it initially answered Smitko's petition. The constitutional requirement that such a claim must be asserted timely cannot be circumvented in this matter. See Naghi v. Brener, 08-2527, pp. 10-11 (La.6/26/09), 17 So.3d 919, 925-26. The "relation back" of a pleading cannot interfere with the running of a peremptive period, such as the six-month peremptive period set forth for the annulment of tax sales in La. Const. art. 7, § 25(C). The cause of action can not be resurrected by filing a late supplemental and amending answer. Louisiana has a long-standing policy to make certain and protect the title to immovable property. Harris v. Estate of Fuller, 532 So.2d 1367 (La.1988). This purpose is served by the strict application of the provisions of La. Const, art. 7, § 25 and former La. R.S. 47:2228.
Moreover, for the following reasons, even if a proceeding to annul had been timely instituted, appellants have not established the invalidity of the tax sale. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made. La. Const, art. 7, § 25(A); Lewis v. Succession of Johnson, 05-1192, p. 9 (La.4/4/06), 925 So.2d 1172, 1177. A party challenging the tax sale must offer evidence sufficient to rebut the presumption of regularity. Only if the presumption is sufficiently rebutted does it become the burden of the tax purchaser to go forward and prove that all requisites for a valid tax sale were complied with. Cressionnie v. Intrepid, Inc., 03-1714, p. 4 (La.App. 1st Cir.5/14/04), 879 So.2d 736, 739. Although Dulac Dat bore the initial burden, upon supporting its motion for summary judgment with the tax deed, the burden shifted to the appellants to produce factual support *1022 sufficient to establish that they would be able to satisfy their evidentiary burden at trial, i.e., defendants were required to offer evidence sufficient to rebut the presumption of regularity. See La. C.C.P. art. 966(C)(2).
To meet this burden, appellants assert the tax sales violated due process. The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the states, from depriving any person of property without "due process of law." In Mennonite Board of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983), the United States Supreme Court held that the sale of property for nonpayment of taxes is an action that affects a property right protected by the Due Process Clause of the Fourteenth Amendment. Therefore, notice of the delinquency and pending tax sale must be sent by mail or other means certain to ensure actual notice if the party's name and address are readily ascertainable. Id. Due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Dusenbery v. U.S., 534 U.S. 161, 168, 122 S.Ct. 694, 700, 151 L.Ed.2d 597 (2002); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The notice and opportunity that is required is that which is "appropriate to the nature of the case." Jones v. Flowers, 547 U.S. 220, 223, 126 S.Ct. 1708, 1712, 164 L.Ed.2d 415 (2006).
However, due process does not require actual notice before the government may take property; the state must attempt to provide actual notice. Dusenbery, 534 U.S. at 170, 122 S.Ct. at 701. "As Mullane made clear, the Due Process Clause does not demand actual, successful notice, but it does require a reasonable effort to give notice." Small v. U.S., 136 F.3d 1334, 1336 (D.C.Cir.1998). Procedural requirements must not "place impossible or impractical obstacles" on the government. Failure of notice in a specific case does not establish the inadequacy of the attempted notice. Jones, 547 U.S. at 231, 126 S.Ct. at 1717. The constitutionality of a particular procedure for notice is assessed ex ante, rather than post hoc. Id.
In Jones, the Supreme Court held that the notice of an impending tax sale, which was sent to the taxpayer by certified mail but was returned unclaimed, was insufficient to satisfy due process. The Court took into consideration that based on the "practicalities and peculiarities of the case," the government knew that notice had been ineffective and required additional reasonable steps to effect notice, such as resending the notice by regular mail or by posting a notice on the front door of the residential property. However, the Court rebutted the taxpayers' argument that the government should have searched for his new address in the phonebook when the notice was returned unclaimed, stating, "We do not believe the government was required to go this far." Jones, 547 U.S. at 236, 126 S.Ct. at 1719.
At all times relevant to these proceedings, La. R.S. 47:2180 addressed the initial notice of delinquency that the tax collector was to provide to the taxpayer, as follows, in relevant part:[10]

*1023 A(1)(a) On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent . . ., written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
. . .
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein. . . .
C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish . . ., then such notice shall be given in the manner provided by law for judicial sales. . . . The collector shall certify on his tax rolls that he has published the notices, and the certificate on either roll shall make full proof thereof until disproved in a judicial proceeding.
In the matter before us, the Sheriff mailed notice to GSS c/o Source Bidco, at the East Airport Avenue, Baton Rouge, Louisiana address, and the Sheriff published the subsequent general notices in the newspaper as required by statute. GSS and Source Bidco failed to rebut the presumption of regularity that applies to tax adjudications. They did not establish that the tax rolls reflected an address for GSS other than the East Airport address. While the affidavits submitted by GSS's shareholders established that GSS had received no actual notice, the affidavits failed to establish GSS's whereabouts or that it had another viable address reasonably ascertainable by the Sheriff. GSS presented no evidence establishing that the Sheriff should have known that GSS's mailing address was not the one to which the notice was sent or that the Sheriff had any reason to believe that GSS could not be reached at the address to which the notice was mailed. The Sheriff made a reasonable calculation to provide notice by sending the tax sale notice to the available address. No mail was returned to the Sheriff, so there was no new information or notice to the Sheriff that any additional steps needed to be taken to satisfy due process requirements. The Sheriff cannot be faulted for not taking additional steps to notify GSS based on the facts known to him. Jones, 547 U.S. at 234, 126 S.Ct. at 1718.
While the Sheriff arguably violated the notification requirements outlined in our own state statutes, by not sending the mailed notice by "certified mail," that fact alone, however, does not itself mean that the Sheriff deprived GSS of procedural due process under the Fifth Amendment. See Tate v. Dist. of Columbia, 627 F.3d 904, 908 (D.C.Cir.2010), cert. denied, ___ U.S. ___, 131 S.Ct. 2886, 179 L.Ed.2d 1198 (2011). A statutory requirement that requires the use of certified mail arguably exceeds constitutional requirements. See Jones, 547 U.S. at 226, 126 S.Ct. at 1714. The Supreme Court recognized that "the use of certified mail might make actual notice less likely in some casesthe letter *1024 cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time. Following up with regular mail might also increase the chances of actual notice. . . ." Jones, 547 U.S. at 235, 126 S.Ct. at 1719. Further, the Supreme Court held that the tax collector is not obligated to perform "an open-ended search for a new address." Jones, 547 U.S. at 236, 126 S.Ct. at 1719. Accordingly, the Sheriff was not required to make an open-ended inquiry to locate GSS. To require such an investigation by the tax collector would impose an unreasonable imposition. See Jones, 547 U.S. at 236, 126 S.Ct. at 1719.
Lastly, appellants assert the tax sale is invalid due to lack of notice to other lienholders.[11] However, appellants have failed to establish that the lienholders complied with the provisions of former La. R.S. 47:2180.1 by providing notice of their legal interests to the Sheriff tax collector.[12] Further, appellants are without standing to attack the tax sale on the basis that notice was not provided to other persons or entities. "[T]he standing inquiry requires careful judicial examination of . . . whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). When the facts alleged in the petition provide a remedy to someone, but the plaintiff who seeks the relief for himself is not the person in whose favor the law extends the remedy, the petitioner lacks standing. In re Melancon, 05-1702, p. 10 (La.7/10/06), 935 So.2d 661, 668. Standing may exist for a portion of a party's claim, but be lacking for a different portion of the same claim. Id. Here, appellants have standing to challenge the notice that they each received respectively, but they have no standing to challenge the lack of notice to other mortgagors or lienholders.
As addressed above, appellants did not timely attack the manner in which the sale of the property was conducted. The former property owner did not institute a timely "proceeding to annul." La. Const, art. 7, § 25; former La. R.S. 47:2228. Unless the proceeding to annul is instituted within six months after service of notice of sale, the constitutional provision clearly mandates that no sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale. Appellants failed to *1025 establish proof of payment of the taxes. La. Const, art. 7, § 25.
Accordingly, we find that appellants failed to offer evidence sufficient to rebut the presumption of regularity afforded to the sheriffs tax deed. Thus, the burden of proof never shifted to Dulac Dat to prove that all requisites for a valid tax sale were complied with. Having reviewed the applicable law, we find no legal error in the trial court's decision. Since we conclude that there is no genuine issue as to material fact and no error of law, Dulac Dat was entitled to summary judgment in its favor. See La. C.C.P. art. 966(B) and 967(B).

III. CONCLUSION
For these reasons, we affirm the May 13, 2009 judgment of the trial court that granted summary judgment in Dulac Dat's favor against GSS and Source Bidco. One-half of the costs of this appeal are assessed to GSS, and the other one-half are assessed to Source Bidco.
AFFIRMED.
GUIDRY, J., concurs in the result.
McCLENDON, J., concurs and assigns reasons.
WELCH, J., dissents and assigns reasons.
HIGGINBOTHAM, J., dissents and assigns reasons.
McCLENDON, J., concurs and assigns reasons.
I agree with the majority's analysis regarding the failure of the property owner to timely institute a proceeding to annul. Therefore, I respectfully concur with the result reached.
WELCH, J., dissenting.
I respectfully dissent. I find that GSS's claim of nullity based on lack of notice was properly preserved for consideration by the trial court because GSS affirmatively raised the issue of lack of proper notice in its answer. Furthermore, upon reviewing all of the evidence in the record on the issue of notice, I find that genuine issues of material fact exist as to whether the notices of the tax deficiencies and tax sales sent by the Sheriff in this case are constitutionally sufficient, making summary judgment inappropriate to resolve the notice issues. Therefore, I would remand the matter to the trial court to determine the validity of the tax sales.
HIGGINBOTHAM, J., dissenting.
I respectfully disagree with the majority opinion, because the uncontradicted evidence submitted in opposition to Dulac Dat's motion for summary judgment reveals that GSS and Source Bidco never received notice of the tax delinquency and tax sale. GSS and Source Bidco bore the burden of proving a defense to the tax sale, i.e., the lack of notice, thereby establishing the absolute nullity of the tax sale. The majority's distinction of Jamie Land Co., Inc. v. Touchstone, 2006-2057 (La. App. 1st Cir.6/8/07), 965 So.2d 873, is not persuasive. As we clearly held in Jamie Land, 965 So.2d at 875, a claim of absolute nullity of a tax sale can be raised as an affirmative defense. See also Cressionnie v. Intrepid, Inc., 2003-1714 (La.App. 1st Cir.5/14/04), 879 So.2d 736, 739. Additionally, in the absence of a majority vote by this court en banc to overrule existing First Circuit caselaw directly on point in Jamie Land and Cressionnie, this court remains bound by those opinions.
Furthermore, GSS timely preserved its claim that the tax sale was absolutely null by filing an answer specifically pleading *1026 that "no notice was ever sent [or] received" shortly after service of Dulac Dat's petition. The jurisprudence holds that courts may overlook miscaptioning of a pleading where the other party is not prejudiced. Evans v. Ivy, 428 So.2d 886, 889 (La.App. 1st Cir.1983); Higdon v. Higdon, 385 So.2d 396, 398 (La.App. 1st Cir.1980). It is clear in this case that Dulac Dat was not prejudiced or surprised by GSS and Source Bidco's lack of notice claim, since the original pleadings filed by both GSS and Source Bidco fairly alerted Dulac Dat of their claims of inadequate and unconstitutional notice, essentially setting forth a timely reconventional demand. See Greene v. Greene, 398 So.2d 59, 63 (La. App. 3rd Cir.), writ denied, 405 So.2d 529 (La.1981).
When a tax purchaser sues to quiet a tax title, that title is put at issue and the former owner may avail itself of any defense sufficient to defeat the tax title. Jamie Land, 965 So.2d at 875; Cressionnie, 879 So.2d at 739. Lack of notice is a defense sufficient to defeat the tax title. The statutory time limitations for attacking the validity of a tax sale do not affect a tax sale that was already an absolute nullity. Jamie Land, 965 So.2d at 877.
It is uncontradicted that GSS and Source Bidco did not receive written notice of the tax deficiency or tax sale as outlined by former La. R.S. 47:2180, which required the tax collector to provide the delinquent taxpayer with specific notice by certified mail, with return receipt requested. GSS submitted evidence that the Sheriff sent GSS's notice to an incorrect address and the notice was not sent by certified mail. GSS's evidence revealed that no notice was sent to Source Bidco or any other recorded lienholder. Furthermore, the correct addresses for both GSS and Source Bidco were readily ascertainable. Due process requires that the property owners be properly notified before property can be sold for a tax deficiency. If notice requirements are not followed, the sale is null and void, or an absolute nullity. See Lewis v. Succession of Johnson, 2005-1192 (La.4/4/06), 925 So.2d 1172, 1183-1184; Jamie Land, 965 So.2d at 875.
It is well settled that the giving of notice of a tax delinquency is mandatory and that failure to give this notice is constitutional grounds for the annulment of a tax sale. Hamilton v. Royal Intern. Petroleum Corp., 2005-846 (La.2/22/06), 934 So.2d 25, 30, cert. denied, 549 U.S. 1112, 127 S.Ct. 937, 166 L.Ed.2d 704 (2007). Due process requires that such notice must be sent by mail or other means certain to ensure actual notice if the party's name and address are reasonably ascertainable. Vincson, Inc. v. Ingram, 2001-2655 (La.App. 1st Cir.11/8/02), 835 So.2d 813, 815. In Vincson, 835 So.2d at 816, this court observed that as the delinquent taxpayer was a corporation, a simple call by the sheriff to the secretary of state would have provided the correct address for notice, and this was an additional reasonable step that could have been taken.
Moreover, the United States Supreme Court has declared in Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983), that "[w]hen the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." In this case, Source Bidco was a reasonably ascertainable mortgagee with a significant interest in the property sold at the tax sale, and whose identity and address could easily be extracted from a review of the mortgage records of Terrebonne Parish. Despite the presence of the mortgage in the public records, the Sheriff made no attempt to *1027 notify Source Bidco of the tax delinquency or impending tax sale. The failure of the Sheriff to give Source Bidco due notice of the impending tax sale of GSS's property was in violation of Source Bidco's constitutional right to due process. For that additional reason, the tax sale is rendered an absolute nullity. See Weatherly v. Optimum Asset Management, Inc., 2004-2734 (La.App. 1st Cir.12/22/05), 928 So.2d 118, 123; In re Raz, 2003-0893 (La.App. 1st Cir.2/23/04), 871 So.2d 363, 370; and Bank of West Baton Rouge v. Stewart, 2000-0114 (La.App. 1st Cir.2/16/01), 808 So.2d 464, 466.[1]
Thus, the trial court erred in granting summary judgment in favor of Dulac Dat, thereby confirming and quieting title to GSS's property. After GSS and Source Bidco offered evidence of the lack of notice, they had established the absolute nullity of the tax sale. It then became Dulac Dat's burden to go forward and prove that all requisites for adequate notice of a valid tax sale were complied with. See Cressionnie, 879 So.2d at 740. Dulac Dat did not offer any evidence to meet its burden; consequently, the summary judgment in favor of Dulac Dat was improper. The tax sale is an absolute nullity because it was in violation of the property owner's and mortgagee's constitutional right to due process. Therefore, the trial court's judgment should be reversed.
For these reasons, 1 respectfully dissent.
NOTES
[1] When the notices of the tax sales at issue were mailed, and when the petition to quiet tax title was served, former La. R.S. 47:2228 provided as follows, in pertinent part:

After the lapse of three years from the date of recording the tax deed . . ., the purchaser, his heirs or assigns, may institute suit by petition and citation as in ordinary actions against the former proprietor. . . of the property, in which petition must appear a description of the property, mention of the time and place of the sale . . ., reference to page of record book and date of recording tax deed, notice that petitioner is owner of the said property by virtue of said tax sale, and notice that the title will be confirmed unless a proceeding to annul is instituted within six months from date of service of the petition and citation. The petition and citation shall be served as in ordinary suits; provided that if the former proprietor be . . . unknown . . . the court shall appoint a curator ad hoc to represent him and receive service. . . . After the lapse of six months from the date of service of petition and citation, if no proceeding to annul the sale has been instituted, judgment shall be rendered quieting and confirming the title. (Emphasis added).
2008 La. Acts, No. 819, § 2, effective January 1, 2009, repealed La. R.S. 47:2221 to 2230. Section 1 of the same act enacted La. R.S. 47:2266, effective January 1, 2009, which reproduces the substance of and combines former La. R.S. 47:2228 and 47:2228.1. See La. R.S. 47:2266, Comment-2008. The parties do not dispute that the earlier statutory provisions apply to this case.
[2] The respective tax sale deeds described the three tracts at issue as follows:

ON THE LEFT DESCENDING BANK OF BAYOU GRAND CAILLOU. BOUNDED ABOVE BY EVEST VOISIN, SR., ETALS. BOUNDED BELOW BY EVEST VOISIN. TRACT P-Q-R-S-P. AS SHOWN ON "MAP SHOWING SURVEY OF PROPERTY BELONGING TO & CLAIMED BY STANLEY DAVID LUKE, LOCATED IN SECTION 86 T19S R17E." CB 1782/229

 1 COMMLOT(S) 1100
 INDUSTRIAL 21275

TRACT A-B-C-D-A. AS SHOWN ON "MAP SHOWING SURVEY OF PROPERTY BELONGING TO AND CLAIMED BY STANLEY DAVID LUKE, LOCATED IN SECTION 86 T19S R17E." CB 1782/227

 1 COMMLOT(S) 1100
 WAREHSE BLDG 9240

TRACT J-K-L-M-N-O-J. AS SHOWN ON "MAP SHOWING SURVEY OF PROPERTY BELONGING TO AND CLAIMED BY STANELY DAVID LUKE. LOCATED IN SECTION 86 T19S R17E." (FORMERLY KNOWN AS LOTS 4 & 5 BLOCK 1 EVEST VOISIN SUBD.) CB 1782/225

 1 LOTS(S) 755
 MISC. 1000

(Emphasis added.)
[3] See La. Const, art. 7, § 25(B) and former La. R.S. 47:2221.
[4] The June 25, 2003 tax deeds relating to the subject property were attached as exhibits to this judgment.
[5] The Sheriff's tax sale notice for Tract J-K-L-M-N-O-J was mailed to 455 E. Airport Avenue. The tax sale notices for the other two tracts of land were mailed to 456 E. Airport Avenue. The record establishes that the East Airport Avenue addresses were the addresses for First Louisiana Business & Industrial Development Corporation ("First Louisiana Bidco") and Source Bidco. It is undisputed that the names of First Louisiana Bidco and Source Bidco represented the same business interests. Counsel for Source Bidco represented in open court, "Source BIDCO is First Louisiana [Bidco]it's a name change."
[6] The record establishes that Coastal Commerce Bank filed a petition to annul the subject tax sales in January 2008, but on its own motion, the petition was dismissed with prejudice by judgment dated February 21, 2008.
[7] The Sheriff answered that on June 17, 2003, his office had notified Coastal Commerce Bank of the upcoming tax sale via a telephone call.
[8] GSS submitted an April 8, 2009 affidavit of Parker, wherein he attested that he first learned of the tax sales when Smitko contacted him after filing her November 2006 lawsuit. GSS also submitted the affidavit of Louis Lindsey, another shareholder and director of GSS, who also attested that GSS did not receive any notices from the Sheriff of its 2002 property tax delinquencies, any notices of the scheduled tax sales of its properties in June 2003, or any notices of its right to redeem the property.
[9] GSS asserts that a claim of an absolute nullity can be raised as an affirmative defense, citing Jamie Land Co., Inc. v. Touchstone, 06-2057, p. 4 (La.App. 1st Cir.6/8/07), 965 So.2d 873, 875. In Jamie Land, the property in question was assessed with taxes, and the assessment was sent to an obsolete rural route address. The following year, the property was sold at a tax sale, and then sold to another corporation. When the former owners of the residential property discovered the sale, they notified the tax assessor, who arranged for the error to be cured. The Louisiana Tax Commission ("LTC") cancelled the tax sale and directed that the mortgage records be corrected. The plaintiff corporation, which claimed the land subject to the tax sale, later filed an action to quiet title to the property, naming the tax debtors and the "LTC" as defendants. The plaintiff corporation filed a motion for summary judgment, asserting that the tax debtors' right to redeem the property had been lost once the three-year redemption period had lapsed and claimed that the tax debtors' only recourse was to file suit and attempt to annul the sale. The LTC also filed a motion for summary judgment urging that the tax sale was null and void. The trial court granted LTC's motion, declaring the tax sale null and void.

In upholding the trial court's finding of nullity, this court stated in dictum that "a claim of absolute nullity can be raised as an affirmative defense." However, in Jamie Land, this court also recognized the existence of an alternative procedure for annulling a tax sale based on an erroneous assessment as set forth in La. R.S. 39:351. Thus, the six-month time limitation of La. Const, art. 7, § 25 was not implicated because the LTC had cancelled the tax sale prior to the time that the plaintiff corporation filed its suit to quiet tax title. As such, we find Jamie Land to be distinguishable from the facts of the present case.
[10] Louisiana Revised Statutes 47:2180 was repealed by 2008 La. Acts, No. 819, § 2, effective January 1, 2009. Section 1 of the same act enacted current La. R.S. 47:2153(A) and (B), which generally reproduces the substance of the former statute with certain modifications. See La. R.S. 47:2153, Comments 2008(a).
[11] Source Bidco has not established, or even specifically alleged, that it did not receive actual notice of the tax sale.
[12] Former La. R.S. 47:2180.1 was repealed by 2008 La. Acts, No. 819, § 2, effective January 1, 2009. Prior to its repeal, it provided as follows, in pertinent part:

A. On the second day of January each year or as soon thereafter as possible, the tax collector shall address to each person holding a properly recorded mortgage on immovable property for which taxes are delinquent, if such mortgage holder has notified the tax collector of such recorded mortgage, a written notice as provided in R.S. 47:2180 that the taxes on the immovable must be paid within twenty days after the service or mailing of the notice or the property will be sold according to law. The notice shall be sent to each person holding a properly recorded mortgage on immovable property for which taxes are delinquent by certified mail return receipt requested or by personal or domiciliary service on the mortgagee. . . . The notification by the mortgagee to the tax collector shall be renewed annually.
(B)(2) Notwithstanding any other law to the contrary, a tax sale shall not be annulled or set aside due to lack of notice to the mortgagee as provided herein. (Emphasis added.)
Currently, Louisiana Revised Statutes 47:2159 reproduces the substance of former La. R.S. 47:2180.1.
[1] See also Tietjen v. City of Shreveport, 2009-2116 (La.5/11/10), 36 So.3d 192, 196 n. 6, where the Louisiana Supreme Court acknowledged a split in the courts of appeal on the issue of whether a mortgagee is due notice of delinquent taxes and pendency of a tax sale if the mortgagee is readily discernible on the public records, but has not notified the tax collector of the existence of its mortgage and paid the required tee of former LSA-R.S. 47:2180.1. (Former La. R.S. 47:2180.1 was repealed by 2008 La. Acts, No. 819, § 2, effective January 1, 2009. The newly enacted La. R.S. 47:2153 and 47:2159, effective January 1, 2009, consolidates and generally reproduces the substance of former La. R.S. 47:2180, 2180.1, and 2181 with certain modifications. See La. R.S. 47:2153 and 47:2159, comments-2008.) Without further discussion specifically resolving the appellate courts' split on the issue, the Supreme Court reversed the second circuit, finding that the trial court judgment holding the tax sale null and of no effect was not manifestly erroneous and was supported by the evidence of inadequate pre-sale notice to the property owner and mortgagee bank in that case. Tietjen, 36 So.3d at 197-198.